**Shahid HUSSAIN, Personal Representative of the Estate of Uzma Hussain, Deceased, Plaintiff,**

v.

**KAISER FOUNDATION HEALTH PLAN OF THE MID–ATLANTIC STATES, INC., et al., Defendants.**

Civil Action No. 95–CV–701–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 5, 1996.

Deborah A. Vitale, Miller & Vitale, Alexandria, Virginia, for Plaintiff.

Bernard G. Feord, Jr., Pledger & Santoni, McLean, Virginia, Richard C. Sullivan, Jr., Alexandria, Virginia, for Defendants.

**1332**

## MEMORANDUM OPINION

PAYNE, District Judge.

This matter is before the court on the Motion for Partial Summary Judgment filed by the defendant, Inova Healthcare Services t/a Fairfax Hospital, seeking dismissal of Count I of the Complaint which alleges a violation of the Emergency Medical Treatment And Active Labor Act, 42 U.S.C. § 1395dd et. seq. ("EMTALA"). For the reasons set forth below, the Motion for Partial Summary Judgment is granted and Count I is dismissed with prejudice.

## STATEMENT OF FACTS

The record on this motion consists of the Complaint, the affidavit of Dr. Farideh Sadeghi filed by Fairfax Hospital, the affidavit of Dr. David Abramson filed by the plaintiff, the affidavit of Judy Brown, the document custodian of Fairfax Hospital, and certain documents relating to the treatment and admission of the plaintiff's decedent. The factual circumstances presented by this record are recounted below.

At 10:30 a.m. on February 15, 1994, the decedent, Uzma Hussain, presented to the Emergency Department of the Fairfax Hospital and made a request for examination and treatment of what she perceived to be an emergency medical condition. According to the medical records and the affidavit of Dr. Sadeghi, Ms. Hussain was diagnosed with acute recurrent pancreatitis and was treated intermittently on thirteen occasions between 10:30 a.m. and her admission for in-patient treatment of the diagnosed condition at 4:30 p.m. the same day (Brown affidavit, ¶ 3 and exhibits).

According to the Complaint and the affidavit of Dr. Abramson, at an unspecified time in the early morning ("after midnight") of February 16, 1994, Ms. Hussain required, for unspecified reasons, a medical examination which was requested by the nursing staff. According to Dr. Abramson's affidavit, "no examination was recorded in the medical records and it must be presumed that no examination was performed even though an examination was requested by the nursing staff." Dr. Abramson further avers that "Ms. Hussain's complications of acute pancreatitis were not diagnosed and her life threatening condition was not stabilized, leading to her death." The affidavit does not state explicitly when these complications arose but the affidavit, as a whole, indicates that they occurred on the morning of February 16 because that was when the nursing staff requested the examination. Further, Dr. Abramson's affidavit contains the conclusory statement that: "[o]nce the nursing staff requests an examination, the failure to perform such examination is disparate treatment. Disparate treatment was provided in this case to Uzma Hussain." According to the brief in opposition to summary judgment, Ms. Hussain died at approximately 6:00 a.m. on February 16, 1994. The record does not document this assertion, but it is not disputed by Fairfax Hospital.

Count I of the Complaint asserts two violations of EMTALA: (1) that Fairfax Hospital "failed to provide for an appropriate medical screening examination within the capability of the hospital's emergency department;" and (2) that Fairfax Hospital "failed to provide within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition [of Ms. Hussain]." At oral argument, the plaintiff abandoned the assertion that Fairfax Hospital had violated the medical screening requirements of 42 U.S.C. § 1395dd(a). Thus, the plaintiff now relies solely on the theory that the hospital violated Section 1395dd(b)(1)(A) of EMTALA by failing to stabilize Ms. Hussain's medical condition.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is to be rendered "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The rules further provide:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon

the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

It is the responsibility of the party seeking summary judgment to inform the court of the basis for its motion, and to identify the parts of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 216 (4th Cir.1987). "[W]here the non-moving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories and admissions on file.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. The moving party may also use affidavits to support its motion. Then the non-moving party must go beyond the pleadings and, by citing its own affidavits or by citing " 'depositions, answers to interrogatories, and admissions on file,' [designating] 'specific facts showing that there is a genuine issue for trial.' " *Id.* Opposition to a properly documented summary judgment motion may not be based solely on the pleadings. *Id.*

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis added). It is the function of the district court not to weigh the evidence, but to determine whether there is a genuine issue for trial, and "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511 (citations omitted). Hence, summary judgment is appropriate if the evidence is "merely colorable" or "not significantly probative." *Id.* at pp. 249–50, 106 S.Ct. at pp. 2510–11 (citations omitted). The standard for summary judgment mirrors the standard for directed verdict (now judgment as a matter of law) under Rule 50(a), Fed. R.Civ.P., the principal difference being procedural. *Id.* at 251, 106 S.Ct. at 2511. And, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). The non-moving party, however, "need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514. The district court also "must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254, 106 S.Ct. at 2513.

Furthermore, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513. Summary judgment is appropriate only if, upon consideration of the record as a whole, a reasonable trier of fact could not find for the non-movant. *Allstate Financial Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir.1991). But, where a faithful examination of the record establishes the absence of a genuine issue of material fact, it is "the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987); *see also Guinness PLC v. Ward*, 955 F.2d 875, 883 (4th Cir.1992). With these principles in mind, the court now considers the motion for partial summary judgment filed by Fairfax Hospital.

## DISCUSSION

The starting point for an analysis of the issues presented by this motion is, of course, the statute which forms the basis of the plaintiff's claim. Congress enacted EMTALA in response to its "concern that hospi-

tals were 'dumping' patients [who were] unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their emergency conditions were stabilized." *Brooks v. Maryland General Hosp., Inc.*, 996 F.2d 708, 710 (4th Cir. 1993). EMTALA was designed to address this concern by providing an " 'adequate first response to a medical crisis' for all patients." *Baber v. Hospital Corp. of America*, 977 F.2d 872, 880 (4th Cir.1992) (quoting 131 Cong. Rec. S13904 (daily ed. Oct. 23, 1985) (statement of Sen. Dole)). EMTALA was not intended to provide a federal remedy for general medical malpractice redressable under state law. *See Brooks*, 996 F.2d at 710 (4th Cir.1993) Rather, Congress intended to remedy the deficiency under traditional state tort law which does not impose a legal duty on a hospital to provide access to, and treatment in, the emergency room for those who are unable to afford it. *See id.*

With this general statutory background in mind, it is necessary to examine the specific part of EMTALA which has now become the focal point of Count I, Section 1395dd(b)(1)(A). It provides:

> If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide . . . (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required *to stabilize the medical condition* . . .

This part of EMTALA obligates the hospital at which a person presents with an "emergency medical condition" to provide "such further medical examination and such treatment as may be required *to stabilize the medical condition.*" This statutory language clearly refers back to the "emergency medical condition" observed upon the patient's initial appearance at the hospital's emergency department.

An "emergency medical condition" is defined as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that *the absence of immediate medical attention* could reasonably be expected to result in—

> (i) placing the health of the individual . . . in jeopardy,
>
> (ii) serious impairment of bodily functions, or
>
> (iii) serious dysfunction of any bodily organ or part."

EMTALA defines the terms "to stabilize" and "stabilized," but does so only "with reference to an emergency medical condition" as defined in Section 1395dd(e)(1)(A). Thus, with reference to an emergency medical condition requiring immediate medical attention to forestall serious jeopardy to health, serious impairment of bodily functions or serious dysfunction of bodily organs or parts, the term "to stabilize" means:

> to provide such medical *treatment of the condition* as may be necessary to assure, within reasonable medical probability, that no material deterioration *of the condition* is likely to result from or occur during the transfer of the individual from the facility. . . .

42 U.S.C. § 1395dd(e)(3)(A). In that same context, the term "stabilized" means:

> that no material deterioration *of the medical condition* is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from [the hospital]. . . .

42 U.S.C. § 1395dd(e)(3)(B).

█ Taken as a whole, then, the duty imposed on a hospital by Section 1395dd(b)(1)(A) is to stabilize the emergency medical condition with which the patient initially presents to such a point that it will not materially deteriorate during, or as a result of, transfer from the first hospital to another one.

█ Fairfax Hospital bases its entitlement to summary judgment on the assertion that the allegations of the Complaint and the undisputed facts that Ms. Hussain was treated, diagnosed and admitted preclude a finding that Ms. Hussain's condition was not stabilized within the meaning of EMTALA. This is because, as to stabilization, the Complaint makes the conclusory allegation that the hos-

pital failed to provide the requisite stabilization and the record shows that Ms. Hussain's emergency medical condition was diagnosed, treated for several hours and that, at 4:30 p.m., Ms. Hussain was admitted for further treatment of the condition originally diagnosed in the emergency room. This, says Fairfax Hospital, is legally insufficient to permit a jury to find that it failed to stabilize the emergency medical condition with which Ms. Hussain presented at 10:30 a.m. on February 15.

The evidence offered by the plaintiff in opposing summary judgment leaves no real room for dispute or doubt on the material issue. Indeed, the affidavit of Dr. Abramson convincingly shows that the evidence at trial would be that Ms. Hussain, who indisputably was treated in the emergency department over a six-hour period for recurrent acute pancreatitis and was then admitted at 4:30 p.m., developed the complications which led to her death at least eight hours after admission. This allegedly occurred because doctors at the hospital failed to respond to a nursing staff request to examine Ms. Hussain and the consequent failure to diagnose and treat the complications.

Taken as a whole, the plaintiff's proof does not establish or permit an inference that the Fairfax Hospital failed to stabilize the original emergency medical condition—acute recurrent pancreatitis—to such a point that it would not materially deteriorate during, or as a result of, transfer to another hospital. It may well be that the plaintiff has a valid claim against the hospital and the doctors for wrongful death. But, there is, on this record, no claim under EMTALA because neither in its text nor its avowed purpose does EMTALA reach into the hospital room of a patient admitted for several hours to redress the failure of hospitals to follow standard medical procedures in connection with in-patient hospital treatment. An interpretation such as that would convert EMTALA into a federal malpractice statute, something it was never intended to be.

### CONCLUSION

For the foregoing reasons, the Motion for Partial Summary Judgment is granted and Count I is dismissed with prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.