Annabelle **LIPSETT**, Plaintiff,

v.

**UNIVERSITY OF PUERTO RICO;** Pedro Juan Santiago Borrero, individually and in his capacity as Dean of the School of Medicine of the University of Puerto Rico; Jose R. Gonzalez Inclan, individually and in his capacity as Acting Director of the Department of Surgery and as Acting Director of the Surgery Residency Training Program; Gumersindo Blanco, individually and in his capacity as Director of the Department of Surgery and Chairman of the University of Puerto Rico and Affiliated Hospitals Residency Training Program, Ernesto Rivé Mora, individually and in his capacity as Director of the Training Program of the San Juan Veterans Administration Hospital, Defendants.

Civ. No. 83–1516 (JP).

United States District Court,
D. Puerto Rico.

June 11, 1990.

Charles S. Hey Maestre, José Antonio Lugo, Instituto Puertorriqueño de Derechos Civiles, Judith Berkan, Río Piedras, Puerto Rico, for plaintiff.

Isabel Muñoz Acosta, Asst. U.S. Atty., Hato Rey, Puerto Rico, for co-defendant Ernesto Rivé Mora.

Rubén Nigaglioni, James D. Noel III, Ledesma, Palou & Miranda, Hato Rey, Puerto Rico, for co-defendant University of P.R., et al.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it plaintiff's motion for certification and/or reconsideration of its evidentiary ruling denying plaintiff's motion to qualify two witnesses, Ms. Karen Wagner and Ms. Mercedes Rodriguez, as experts in sexual harassment pursuant to Federal Rule of Evidence 702.[1] In making the following decision, the Court is mindful of the opinion in the case of *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir.1986), where the court recognized the trial judge's tempta-

---

1. The rule states the following:
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

tion to receive expert testimony by stating that the jury will "give it the weight it deserves." As the court pointed out, this easy explanation often masks the failure of the trial judge to confront an important trial decision. *Id.* The trial judge must be sensitive to qualifications of persons claiming to be expert. *Id.*

For the reasons stated below, we deny plaintiff's motion.

## I. CERTIFICATION

Title 28 U.S.C. section 1292(b) authorizes a district court judge to request an immediate appeal from an otherwise nonappealable order when the judge

> shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation ... [the] application for an appeal ... shall not stay proceedings in the district court unless the district judge ... shall so order.

■■■ We note from the outset that in applying the criteria set forth in the statute, appeal is discretionary at both the district court and court of appeals levels. 16 C. Wright, A. Miller, E. Cooper & E. Greeman, *Federal Practice and Procedure* § 3929 at 140 n. 23 (citing S.Rep. No. 2434, 85th Cong., 2d Sess. 1958 (1977)) (hereinafter C. Wright & A. Miller). As a matter of policy, interlocutory appeals should be reserved for cases where such an appeal would avoid protracted litigation. *Long Island Lighting v. Transamerica Delaval, Inc.,* 648 F.Supp. 988, 991 (S.D.N.Y.1986). Moreover, the purpose of the appeal is not to review the correctness of an interim ruling, but rather to avoid harm to litigants or to avoid unnecessary or repeated protracted proceedings. 16 C. Wright & A. Miller § 3929 at 135, 137.

■■■ When considering whether to certify an interlocutory appeal, the district court must consider the relative advantages and disadvantages of immediate appeal in light of the guidelines provided in the statute. *Id.* at 156. The disadvantages

of immediate appeal increase with the probabilities that a long appellate consideration will be required, the order will be affirmed, the continued district court proceedings without appeal might moot the issue, reversal would not substantially alter the course of the district court proceedings, and the parties will not be relieved of any significant burden by reversal. *Id.*

## II. RULING ON SEXUAL HARASSMENT EXPERTS

■■ Pursuant to Rule 702, when determining whether to admit the testimony of an expert, the Court must first examine who the proposed expert is: does she fall within the traditionally known fields of learning and expertise such as architecture, engineering or medicine, and does she possess the knowledge, skill, experience, training or education so that she can be qualified as an expert. *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* § 702[04] (1988). Then we must examine the subject matter of the offered testimony, and whether the expert will help the jury understand the evidence or determine a fact in issue as Rule 702 provides.

■■ Experts in the traditional professions work within fields which require rigorous professional training. These experts begin to develop their qualifications long before they are admitted to their particular professional school, because they must attend individual colleges and major in fields of study that prepare them for graduate school.

The best are admitted to these professional schools, sometimes ten applicants to a slot. The professional schools are extremely demanding and only the best students graduate. Then these professionals must pass further board and bar examinations and other difficult tests in order to be admitted into their profession—the lawyers in Puerto Rico know from the Puerto Rican Bar exam that only a very small percentage passes these exams.

These professionals go on to specialize in a particular area of practice. They develop a deep respect for truth and *ethics* which

are of great importance in their practice. Professionals who do not conduct themselves within the ethical boundaries of their profession are subject to harsh penalties, including permanently surrendering their licenses to practice. Therefore they are always conscious of ethical behavior. We know then that their opinions are strengthened by professional safeguards that insure that the Court and jury will receive objective testimony and the truth as seen by the professional.

In light of these considerations, the Court finds that the education and experience of Ms. Karen Wagner and Ms. Mercedes Rodriguez, proposed experts in the area of sexual harassment, fail to rise to the level of specialized knowledge we deem necessary to qualify them as experts, and that their testimony would not possess the professional safeguards ensuring objectivity. As Fifth Circuit has noted, the professional expert is a commonplace phenomenon in modern litigation. *In re Air Crash Disaster*, 795 F.2d at 1234. The fact that a person spends substantially all of her time consulting with attorneys and testifying in trials is not a disqualification, but it is not an automatic qualification guaranteeing admission of expert testimony. Experts whose "opinions are available to the highest bidder have no place testifying in a court of law, before a jury, and with the imprimatur of the trial judge's decision that [s]he is an 'expert[,]' " and the trial judge must decide whether the signs of competence and of the contribution of the proposed expert will aid in clearly presenting the dispute. *Id.* at 1234.

In terms of the subject of the expert testimony to be offered in this case, the court must determine whether the offered testimony will assist the jury in understanding the evidence or determining a fact in issue. 3 J. Weinstein & M. Berger, § 702[03]. Plaintiff offers the proposed experts for testimony as to sexual harassment including hostile work environment.

The Supreme Court has stated that a plaintiff may establish a violation of Title VII by showing that discrimination based on sex has created a hostile or abusive work environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49, 59 (1986). We extend the Title VII standards of discriminatory treatment by a supervisor in this mixed employment-training context for claims arising under the equal protection clause as the First Circuit has so instructed. *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 897 (1st Cir.1988).

Courts have recognized that sexual harassment can occur in two different contexts. The first type of claim is quid pro quo harassment where a supervisor conditions the granting of some economic or other job benefit upon the receipt of sexual favors from a subordinate, or punishes the subordinate for refusing to comply. *Id.* The second category of sexual harassment claim is hostile work environment which occurs when one or more supervisors or coworkers create an atmosphere "so infused with hostility toward members of one sex that they alter the conditions of employment" for that sex. *Id.*

Because the jurisprudence concerning hostile work environment claims is recently emerging, the contours of the law have not been clearly defined. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990). However, the few courts dealing with allegations of hostile work environment have agreed that the plaintiff must establish by the "totality of the circumstances" the existence of a working environment which is severe enough to change the conditions of the plaintiff's employment and create an abusive environment. *Andrews*, 895 F.2d at 1482 (citing *Vance v. Southern Bell*, 863 F.2d 1503, 1510 (11th Cir.1989)); *Lipsett*, 864 F.2d at 897–98 (citing *Meritor*, 477 U.S. at 67, 106 S.Ct. at 2405) (other citations omitted). Also, the First Circuit has stated that the fact finder must consider both the man's and the woman's perspective when determining whether there is a sexually hostile work environment. *Lipsett*, 864 F.2d at 898 (citing *Rabidue v. Osceola Refining Co.*, 805 F.2d 611, 626 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987)). *Cf. Andrews*, 895 F.2d at 1482

("discrimination would detrimentally affect a reasonable person of the *same sex* in that position") (emphasis added).

The plaintiff proffers a social worker and a social psychologist as experts to testify about sexual harassment and any facts underlying any case upon which the law of sexual harassment is applicable and whether or not there has been sexual harassment and a hostile work environment in violation of the law which would make the defendants liable in this case. If defendants were in violation of the law, they are liable for money damages payable to the plaintiff, the alleged object of the sexual harassment. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

We conclude that expert testimony on these matters usurps the prerogative of the jury as the fact finder and would not assist the jury in understanding the evidence or determining a main issue of fact in this case, namely, whether the working environment at the University of Puerto Rico Medical School Surgery Program was "so heavily charged with sexism that it was intimidating, hostile, and offensive." *Andrews*, 895 F.2d at 1482. We note plaintiff's argument that the determination of when experts may be used involves "the common sense inquiry as to whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightment from those having a specialized understanding of the subject involved ..." Plaintiff's June 7, 1990 Motion Requesting Certification at 9 (citation omitted). However, we find that the jury does not need additional enlightment on this particular issue: this subject does not lend itself to expert testimony because it deals with common occurrences that the jurors have knowledge of through their experiences in everyday life and their attitudes toward sexual matters. The jury, using its own judgment, must decide whether the totality of the circumstances which has been presented during the trial is enough to constitute a hostile work environment. Plaintiff claims that Federal Rule of Evidence 704[2] does not preclude an expert from testifying as to an ultimate issue. However, we conclude that the proposed experts' testimony in this case would not bring to the jury "anything more than the lawyers can offer in argument." *In re Air Crash Disaster*, 795 F.2d at 1233. The offered experts therefore run the risk of becoming "nothing more than an advocate of policy before the jury". *Id.*

Finally, the witnesses—the doctors and nurses—who have experience the work environment in question in this case have already testified as to their experiences at the University of Puerto Rico School of Medicine Surgery Program. We do not need an expert beyond what they have already attested to. The social worker and social psychologist are not qualified to be experts, and their proffered testimony would not assist the jury. Moreover, they have not received medical training and have not experienced the life and working environment at the UPR School of Medicine General Surgery Program. Their testimony would therefore not assist the jury in any way.

## III. CONCLUSION

Plaintiff's motion for reconsideration of the evidentiary ruling is therefore DENIED.

◼ Plaintiff's request for certification is also DENIED. The admission of these experts pursuant to Rule 702, a matter reviewed for abuse of discretion, does not involve a controlling question of law as to which there is substantial ground for difference. Moreover, an immediate appeal from this order will not materially advance the ultimate determination of the case.

Finally, the certification of this ruling is unwarranted in light of the disadvantages of immediately appealing this ruling, namely: 1) the continued proceedings in this case might moot the issue—plaintiff may

---

**2.** The rule, in pertinent part, provides that:
(a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

prevail; 2) a reversal of this evidentiary ruling would not substantially alter the course of these proceedings; and 3) the parties will not be relieved of any significant burden by reversal of this evidentiary ruling. Accordingly, we are compelled to deny plaintiff's motion requesting certification.

IT IS SO ORDERED.