Cindi HUFFMAN, Plaintiff,

v.

CITY OF PRAIRIE VILLAGE,
KANSAS, Defendant.

No. 95–4121–RDR.

United States District Court,
D. Kansas.

Sept. 18, 1997.

Harold S. Youngentob, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Plaintiff.

Patricia A. Bennett, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, Rebecca S. Yocum, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Overland Park, KS, Steven D. Steinhilber, Thaddeus J. McDonald, III, Sherman, Taff & Bangert, P.C., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

ROGERS, Senior District Judge.

This is an employment discrimination case. Plaintiff brings this action against her former employer, the City of Prairie Village, Kansas, under Title VII and 42 U.S.C. § 1983. She also asserts a state law claim of intentional infliction of emotional distress. Her claims are based upon allegations of a sexually hostile work environment at the Prairie Village Police Department. This matter is presently before the court upon defendant's motion for summary judgment, defendant's motion to exclude testimony of James Bannon, and plaintiff's motion to exclude testimony of defendant's expert witnesses. The court has heard oral argument on these motions and is now prepared to rule.

MOTION FOR SUMMARY JUDGMENT

The defendant seeks summary judgment on all of plaintiff's claims. The defendant contends that the uncontroverted evidence in the record requires the entry of summary

judgment on the following claims: (1) Title VII claim based on a sexually hostile work environment, (2) Title VII claim of retaliation, (3) Title VII claim of constructive discharge, (4) § 1983 claim based on a sexually hostile work environment, and (5) claim of intentional infliction of emotional distress. Plaintiff counters that genuine issues of material facts remain in dispute on each of these claims.

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993):

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Applied Genetics Int'l v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

On January 1, 1990, plaintiff was employed as records clerk for the Prairie Village Police Department. She was subsequently promoted to records clerk II, then to clerk/dispatcher, and finally to dispatcher. Plaintiff tendered her resignation on March 8, 1994. Her last day of employment was March 18, 1994, and her effective termination date was April 1, 1994.

Plaintiff alleges that during her employment at the police department she was subjected to a sexually hostile work environment. She has identified a number of examples of what she regarded as harassment based on her sex. The defendant has selected a number of incidents identified by plaintiff and argued why they do not provide support for her claim. The court shall consider much of the alleged illegal activity as we address the arguments raised by the defendant.

## TITLE VII

The defendant raises five arguments concerning plaintiff's Title VII claims. First, the defendant contends that some of the harassment complained of by plaintiff was not based on sex. Second, the defendant alleges that the harassment complained of did not affect a term, condition or privilege of plaintiff's employment. Third, the defendant argues that the City is not liable under respondeat superior. Fourth, the defendant asserts that it did not retaliate against plaintiff. Finally, defendant argues that plaintiff was not constructively discharged. Sexual harassment is recognized as employment discrimination within the meaning of Title VII. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986). Courts have recognized two distinct categories of sexual harassment claims: quid pro quo harassment and hostile working environment harassment. *Hirschfeld v. New Mexico Corrections Dept.*, 916 F.2d 572, 575 (10th Cir.1990). At the pretrial conference, plaintiff indicated that she was limiting her Title VII claim to a hostile working environment.

In *Winsor v. Hinckley Dodge, Inc.*, 79 F.3d 996, 1000 (10th Cir.1996), the Tenth Circuit summarized the requirements for a hostile work environment as follows:

> A hostile work environment exists when a plaintiff is subjected to sexual harassment "sufficiently severe or pervasive 'to alter

the conditions of the victim's employment and create an abusive working environment.'" [Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57] at 67, 106 S.Ct. [2399] at 2405 [91 L.Ed.2d 49 (1986)] (citation omitted). Sexual harassment is behavior "'that would not occur but for the sex of the employee'.... 'If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination.'" Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1537 (10th Cir.1995) (citations omitted).

The existence of sexual harassment must be determined "in light of 'the record as a whole' and [courts must examine] 'the totality of [the] circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred.'" Meritor Savings, 477 U.S. at 69, 106 S.Ct. at 2406 (citations omitted). The mere utterance of a statement which "'engenders offensive feelings in an employee' would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." Id. at 67, 106 S.Ct. at 2405 (citations omitted).

 In order to survive summary judgment, plaintiff must show facts that support an inference of a sexually hostile environment and support a basis for liability. See Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir.1994), cert. denied, —— U.S. ——, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995). Plaintiff must show specifically that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was sexual or stemmed from sexual animus. Id. "General harassment if not ... sexual is not actionable." Id.

*Harassment Complained of Not Based on Sex*

The defendant contends that some of the harassment complained of by the plaintiff was not based on sex or was gender neutral. Specifically, the defendant points to the following conduct: (1) rumors that plaintiff was dating Sgt. Dennis Nealey; (2) "lovey, kissey noises" made by Sgt. Joe Ozorkiewicz; (3)

cartoons displayed in the department; and (4) actions taken by Lt. Angie Young.

 The court shall first consider the matters relating to conduct by Sgt. Ozorkiewicz. Plaintiff contends that the sexually hostile work environment was created in part by the actions of Sgt. Ozorkiewicz. She points specifically to two instances of harassment in her deposition concerning Sgt. Ozorkiewicz. Plaintiff asserts that she heard rumors that she was dating Sgt. Nealey when the two of them were actually just good friends. Plaintiff heard about a remark made by Sgt. Ozorkiewicz to Sgt. Nealey. Sgt. Nealey testified that he recalled on one occasion Sgt. Ozorkiewicz telling Det. Dick Luzier, "You better quit fucking Angie" and then turning around and saying to Sgt. Nealey, "And, Nealey, you better quit fucking [plaintiff]." Sgt. Nealey stated that Sgt. Luzier appeared upset by the remark. Sgt. Nealey was not particularly offended by this remark, but he did make the incident known to a supervisor because Sgt. Luzier appeared to be upset by the comments.

Plaintiff also testified that on other occasions Sgt. Ozorkiewicz made lovey, kissey noises at Sgt. Nealey and her. Sgt. Ozorkiewicz began making these noises in approximately January 1993, and he continued to make them around plaintiff and Sgt. Nealey until the end of plaintiff's employment with the defendant. Plaintiff testified that both she and Sgt. Nealey were offended by this conduct.

 Sexual harassment is behavior "that would not occur but for the sex of the employee." Winsor, 79 F.3d at 1000. If the nature of an employee's environment, however unpleasant, is not due to her gender, she has not been the victim of sex discrimination. Id. In determining whether questionable conduct is a result of the employee's sex, the key issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. Plakio v. Congregational Home, Inc., 902 F.Supp. 1383, 1389 (D.Kan.1995).

Both the comments concerning plaintiff dating Sgt. Nealey and the noises made by

Sgt. Ozorkiewicz were directed at both plaintiff and Sgt. Nealey. These comments were obviously designed to embarrass both plaintiff and Sgt. Nealey. There is no evidence that the comments and noises were aimed only at plaintiff. The court does not find that this conduct, although offensive, was made because of plaintiff's sex. The evidence before the court shows that both plaintiff and Sgt. Nealey were offended by Sgt. Ozorkiewicz' "lovey, kissey" noises and that Sgt. Nealey made the other matter known to his supervisor. Accordingly, this conduct cannot be used to establish a hostile work environment based on sex.

■ Plaintiff has also suggested that cartoons were prepared by employees of the police department and displayed on bulletin boards and in other places around the department. Plaintiff has suggested that they were offensive to the women in the department and were demeaning to women. Plaintiff produced twelve cartoons that were displayed in the department.

■ The court has reviewed all of the cartoons produced by plaintiff. The court is not persuaded that consideration of these cartoons must be excluded because they are gender neutral. Many of the cartoons produced by plaintiff have a sexual content. They are crude and juvenile in nature. Many are homophobic. They are all generally directed at the male officers in the department. Plaintiff has acknowledged that none of the cartoons were directed at her. Further, she has admitted that they were offensive to both men and women. Thus, while the court does not consider them strong evidence of a hostile environment, we nevertheless believe that they must be considered in determining whether the harassment complained of was sufficiently severe as to alter the conditions of employment and create an abusive working environment. In reaching this conclusion, we rely upon the comments of the court in *Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847, 880 (D.Minn.1993):

> The posting of sexually-oriented materials in common areas may serve as evidence of a hostile environment. *Bennett v. Corroon & Black Corp.*, 845 F.2d 104, 106 (5th Cir.1988), *cert. denied,* 489 U.S. 1020, 109

S.Ct. 1140, 103 L.Ed.2d 201 (1989). This is true regardless of whether the visual materials relate to men or women, or both, generally, or to specific women. *Waltman [v. International Paper Co.],* 875 F.2d [468] at 477 & n. 3 [ (5th Cir.1989) ].

In a footnote to the above passage, the court elaborated upon its ruling as follows:

> In *Bennett,* the court provided a succinct review of why visual materials of a sexual nature, regardless of their gender orientation, may form the basis for claims of hostile environment: "any reasonable person would have to regard [such materials] as highly offensive to a woman who seeks to deal with her fellow employees and clients with professional dignity and with the barrier of sexual differentiation and abuse." 845 F.2d at 106.

*Id.* at 880 n. 80.

We also note that this case differs from the circumstances in *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 800–01 (10th Cir. 1997), where the Tenth Circuit upheld a district court's decision to exclude a "Far Side" cartoon entitled "School for the Mechanically Declined." There, the district court had excluded the cartoon as irrelevant and unfairly prejudicial to the defendant in a sexual harassment case. The Tenth Circuit agreed, finding that the cartoon was not probative of sexual harassment. The Court noted that the cartoon did not contain any "sexual reference or connotations" and did not reveal "anything sexually harassing against women generally, or [the plaintiff] personally." *Id.* at 801. In this case, the cartoons in question do contain sexual references and connotations. While they are not directed at women, they can be considered as evidence in a hostile work environment case for the reasons previously stated.

■ Finally, the court turns to the incidents and conduct involving Lt. Young. In her factual contentions contained in the proposed pretrial order, plaintiff describes her claim concerning Lt. Young as follows:

> Plaintiff's working conditions took a further turn for the worse when as of January 1, 1994, Lt. Angie Young became plaintiff's

immediate supervisor. Ms. Young, in a jealous rage, out of an apparent romantic interest in a police detective, created an intolerable hostile work environment for the plaintiff which compounded the effects of the continuing sexual harassment.

Plaintiff admitted in her deposition that Lt. Young took various actions against her because Lt. Young was jealous of and angry with her due to her involvement with Lt. Young's boyfriend. Plaintiff suggests that the actions taken by Lt. Young as a result of Lt. Young's beliefs concerning plaintiff's relationship with another police officer constitute gender discrimination because such actions would not have been taken against plaintiff but for her gender. We cannot agree with plaintiff's expansive definition of discrimination based upon sex.

In *DeCintio v. Westchester County Medical Center*, 807 F.2d 304 (2d Cir.1986), *cert. denied*, 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987), the Second Circuit considered whether favoritism to a girlfriend constituted discrimination based on sex in violation of Title VII. There, male respiratory therapists complained that a hospital administrator had unfairly structured a job position so as to justify hiring his girlfriend. The Second Circuit rejected plaintiffs' allegation that such conduct violated Title VII, stating: "The proscribed differentiation under Title VII ... must be a distinction based on a persons' sex, not on his or her sexual affiliations." *Id.* at 306–07. The Second Circuit reasoned as follows:

> Ryan's conduct, although unfair, simply did not violate Title VII. Appellees were not prejudiced because of their status as males; rather, they were discriminated against because Ryan preferred his paramour. Appellees faced exactly the same predicament as that faced by any woman applicant for the promotion. Appellees' proffered interpretation of Title VII prohibitions against sex discrimination would involve the EEOC and federal courts in the policing of intimate relationships. Such a course, founded on a distortion of the meaning of the word "sex" in the context of Title VII, is both impracticable and unwarranted.

*Id.* at 308. *See also Thomson v. Olson*, 866 F.Supp. 1267, 1271 (D.N.D.1994) ("sex" for purposes of Title VII does not include "sexual liaison" and "sexual attraction"), *aff'd* 56 F.3d 69 (8th Cir.1995).

There is no indication that Lt. Young's actions were taken because of the plaintiff's sex. Contrary to plaintiff's apparent belief, the mere fact that plaintiff is female does not make Lt. Young's conduct discriminatory. Plaintiff has the burden of demonstrating that the reasons for Lt. Young's behavior were illegal ones. Where plaintiff has admitted that Lt. Young acted for reasons other than illegal ones, albeit for petty or unfair ones, the court cannot hold the defendant responsible. *See Platner v. Cash & Thomas Contractors, Inc.*, 908 F.2d 902, 904–05 (11th Cir.1990) (plaintiff not subjected to gender discrimination where she was discharged based upon belief she was having affair with owner's son that threatened marriage of son); *Benzies v. Illinois Dept. of Mental Health & Developmental Disabilities*, 810 F.2d 146, 148 (7th Cir.), *cert. denied*, 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987) (denial of promotion to person of particular sex not violated if motivated by personal favoritism or grudge); *Bush v. Raymond Corp.*, 954 F.Supp. 490, 498 (N.D.N.Y.1997) (plaintiff not subjected to gender discrimination where supervisor discharged her based on belief she was having sexual relationship with her manager); *O'Patka v. Menasha Corp.*, 878 F.Supp. 1202, 1206–07 (E.D.Wis. 1995) (male plaintiff not subjected to gender discrimination because male supervisor treated plaintiff worse than co-worker who was supervisor's girlfriend). In order to prevail on a sexual harassment claim, plaintiff must show that her gender was the basis of the alleged harassment. The court cannot consider the actions of Lt. Young in determining whether a hostile work environment existed at the Prairie Village Police Department because her actions do not constitute sexual discrimination or sexual harassment.

*Harassment Complained Did Not Affect a Term, Condition or Privilege of Employment*

The defendant contends that the evidence in this case fails to rise to the level of a hostile work environment. The defendant

argues that the incidents noted by the plaintiff fail to demonstrate that a term, condition or privilege of plaintiff's employment were affected.

A hostile work environment is actionable if the complained of conduct affects a "term, condition or privilege" of employment. *Henson v. City of Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982). To satisfy this requirement, plaintiff must show that the sexual harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Creamer v. Laidlaw Transit, Inc.*, 86 F.3d 167, 170 (10th Cir.), *cert. denied*, — U.S. ——, 117 S.Ct. 437, 136 L.Ed.2d 335 (1996); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1414 (10th Cir.1987). In determining whether the conduct complained of was sufficiently severe or pervasive to have affected a term, condition or privilege of employment, a court must consider all pertinent circumstances. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). Among the factors appropriately considered are whether the discriminatory conduct is frequent or severe, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Id.* Not only must the conduct be sufficiently severe or pervasive to create a work environment that is objectively hostile or abusive, but it must also be perceived subjectively as abusive by the victim; "if the victim does not subjectively perceive the environment as abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* at 21–22, 114 S.Ct. at 370.

Plaintiff has recounted only two acts of a physical nature in describing the allegedly hostile work environment at the Prairie Village Police Department. The defendant has suggested for various reasons that the court should not consider either of them. Both matters, like many of the other incidents described by plaintiff, have some ambiguities to them even by plaintiff's accounts.

█ The first incident involves Lt. Terry Grove, a veteran officer of the Prairie Village Police Department. This incident occurred shortly after plaintiff became employed with the defendant. She had attended a party that Lt. Grove also attended. She became intoxicated and left the party with Lt. Grove. They went to plaintiff's car and drove to a nearby parking lot. They began kissing. Lt. Grove then told plaintiff that if she played her cards right, she could have Marge Lundy's job which would have been a job promotion. Plaintiff subsequently performed oral sex on Lt. Grove. The record is not clear as to the events leading to this act. On the one hand, plaintiff testified in her deposition that Lt. Grove asked for oral sex. On the other hand, plaintiff later testified that Lt. Grove did not suggest that if plaintiff performed oral sex he could help her obtain a promotion, but that he insinuated it. She further testified that she acted "consensually" in the act, but also indicated that she felt "pushed into it." She admitted that she was very intoxicated and that her recollection of the details is not clear. Plaintiff complained to no one about this incident. Lt. Grove was not plaintiff's supervisor, but she indicates that she thought he was in a position of power at the department since he "ran" the office.

The court shall consider this incident in determining whether a sexually hostile work environment existed at the police department, but we note several mitigating factors about this matter including its age, the ambiguity of the occurrence, the failure of plaintiff to clearly recollect the details, and her acknowledgment that her actions were consensual. With regard to the last matter, the court recognizes that the nature of the relationship between a veteran police officer and a newly hired records clerk could have an impact on the voluntariness of the plaintiff's conduct.

Plaintiff also testified in her deposition about another employee of the City who inappropriately touched the dispatchers, including plaintiff. Plaintiff testified that Bill Price, the City's animal control officer, was a frequent visitor to the police department and, while he was there, he touched the dispatchers and talked about his sex life. The defendant has argued that the court should not

consider Price's conduct because he was not one of the individuals identified by the plaintiff in her factual allegations in the pretrial order.

The court has reviewed the plaintiff's factual allegations contained in the pretrial order. The court is not persuaded by defendant's argument. The court finds that defendant has read the plaintiff's allegations too narrowly. The allegations are sufficiently broad to consider the conduct of Price. Accordingly, Price's conduct shall be considered in determining whether a sexually hostile work environment existed at the Prairie Village Police Department.

The court shall next turn to the alleged jokes, comments and name-calling that occurred in the department. Plaintiff has suggested that she recalled hearing jokes and people talking about sex on a daily basis while she was employed. She, however, was unable to provide any specific details about these discussions or jokes. She did testify that Sgt. Greg Hudson and Sgt. Greg Burnetta were the primary perpetrators of these jokes and comments. She noted that Sgt. Burnetta called her names, told sexual jokes and talked about his sex life and/or lack thereof on a number of occasions. She stated that Sgt. Hudson repeatedly told sexual jokes. During the course of her deposition, she also discussed other incidents and conduct involving other officers that could be considered sexual harassment. The defendant has not addressed several of these matters, so the court does not intend to discuss them in any detail.

Plaintiff has indicated that she was called names by Sgt. Burnetta on several occasions and that he referred to her disparagingly on other occasions. On one occasion, Sgt. Greg Burnetta called plaintiff "a hussy bitch who loves to fuck." Plaintiff promptly complained to Sgt. Dennis Nealey, and Sgt. Burnetta apologized for the incident. Plaintiff also indicates that Sgt. Burnetta called her and other women in the department "hussies" on a number of occasions. She did not complain to her supervisors about his use of the term "hussy" because "[e]veryone in the entire police department knew how Greg was."

There is little question that name-calling, particularly with a sexual connotation such as "hussy," can help promote a hostile work environment. Sexual epithets that a woman worker is a "whore" or a "bitch" are capable of making the workplace unbearable for the woman verbally so harassed, and since these are accusations based on the fact that she is a woman, they can constitute a form of sexual harassment. *Winsor*, 79 F.3d at 1000.

Finally, we turn to the jokes and sexual comments. It is well settled that verbal harassment alone can produce a sexually hostile work environment. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1050 n. 9 (5th Cir.1996); *Dey v. Colt Construction & Development Co.*, 28 F.3d 1446, 1456 (7th Cir.1994); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463, 1464 (9th Cir.1994), *cert. denied*, 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995); *Burns v. McGregor Electronic Industries*, 989 F.2d 959, 965 (8th Cir.1993). Plaintiff has suggested that such conduct occurred on a daily basis. The fact that plaintiff is unable to provide any details of most of the comments and jokes does not render such evidence inadmissible or insufficient. The court cannot expect any employee to document each and every joke or sexual comment in an environment where such language is commonplace. Rather, the failure of the plaintiff to provide details limits the weight to be attributed to this evidence.

Plaintiff further indicated that she was the subject of rumors about her relationships with police officers during her employment. The nature of these rumors also could have helped produce a hostile work environment. *See Spain v. Gallegos*, 26 F.3d 439, 448–49 (3rd Cir.1994).

After carefully considering all of the evidence in this case, the court is persuaded that plaintiff has sufficiently established that gender-based harassment existed at the Prairie Village Police Department that was pervasive and severe enough to alter the terms, conditions or privileges of employment. The conduct as related by the plaintiff involved more than isolated instances of sexual com-

ments and offensive utterances. The evidence, as previously noted, is somewhat ambiguous in some regards, but overall, we believe that the question of whether a hostile work environment existed at the Prairie Village Police Department must be decided by a jury.

*Liability of Prairie Village under Respondeat Superior*

In *Meritor Savings,* the Supreme Court partially clarified the issue of employer liability in Title VII cases. The Court rejected a blanket rule holding employers automatically liable for sexual harassment by their supervisors. 477 U.S. at 72, 106 S.Ct. at 2408. The Court, however, appeared to reject an absolute requirement of notice. The Court stated: "[A]bsence of notice to an employer does not necessarily insulate that employer from liability." *Id.* Moreover, the Court rejected any notion that "the mere existence of a grievance procedure and a policy against discrimination, coupled with [an employee's] failure to invoke that procedure must insulate [an employer] from liability." *Id.* Instead, the Court suggested that the issue of employer liability should be determined by reference to agency principles. *Id.* at 73, 106 S.Ct. at 2408.

■ The Tenth Circuit has made some effort to clear up the murky state of the law concerning the application of agency principles for the imposition of liability to employers under Title VII for hostile work environment cases involving sexual harassment. An employer may be liable for sexual harassment based upon the conduct of co-workers if any of the following conditions are met: (1) the harassment occurred within the scope of the coworkers' employment; (2) the employer acted negligently or recklessly in failing to recognize and deal with the harassment; and (3) the coworkers in their harassment acted under apparent authority of the employer. *Bolden,* 43 F.3d at 551–52 n. 1. An employer may be liable for sexual harassment based upon the conduct of a supervisor if any of the following conditions are met: (1) the supervisor committed the harassment while acting in the scope of his employment; (2) the employer knew about, or should have

known about, the harassment and failed to respond in a reasonable manner; (3) employer manifested in supervisor the authority to act on its behalf, such manifestation resulted in harm to plaintiff, and plaintiff acted or relied upon apparent authority in some way; or (4) employer delegated authority to supervisor to control plaintiff's work environment and supervisor abused that delegated authority by using that authority to aid or facilitate the perpetration of harassment. *Harrison v. Eddy Potash, Inc.,* 112 F.3d 1437, 1446 (10th Cir.1997).

■ The court is persuaded that the only possible avenue of liability for the defendant involves whether the City was negligent or reckless in failing to respond to hostile work environment sexual harassment. Sexual harassment is rarely, if ever, within the scope of employee's employment, and plaintiff has made no such allegations here. Moreover, the court finds insufficient evidence that any of the employees of the City used their apparent authority or agency relationship to create a hostile work environment. The only possible example of this is the oral sex incident involving Lt. Grove. The remaining evidence fails to reveal any evidence of a city employee using his position of authority to aid in his harassment of plaintiff. We are thus left with the issue of whether the City was negligent or reckless in failing to respond to hostile work environment sexual harassment.

After considering the record in this case and the arguments of the parties, the court is not persuaded that the defendant is entitled to summary judgment on this basis. We begin by noting that material issues of genuine fact exist as to the status of the perpetrators of the sexual harassment. The defendant has argued that the City can escape liability under Title VII because none of the alleged harassers had the authority to "hire, fire, discipline or promote." As to this point, we cannot agree. Recently, in *Harrison,* the Tenth Circuit rejected the suggestion that an employee must be in a supervisory position and exercise significant control over hiring, firing or conditions of employment in order to be regarded as an "agent" under Title VII for the purposes of determining employer

liability. 112 F.3d at 1447–48. The Tenth Circuit indicated that such a view of the term "agent" would have "the illogical result of shielding employers from liability for harassment committed by low-level employees." *Id.* at 1447.

The record is unclear on the issue of whether police officers had direct supervisory authority over plaintiff. The record does reveal that plaintiff had a particular supervisor who controlled the day-to-day aspects of the dispatchers' employment. However, there is evidence that in the hierarchy of the police department, police officers had certain authority and control concerning the dispatchers. Under the facts as provided to the court, we are not persuaded that the police officers can be regarded simply as coworkers. The resolution of this issue, of course, has an effect on the ultimate issue of the liability of the defendant.

The court further notes that issues of genuine fact remain as to the knowledge of the defendant of the harassment. There is little evidence that plaintiff complained about the conduct at the department. She did complain at times, although there is no indication that she ever filed a formal complaint. On one occasion she complained to her supervisor about some offensive conduct and she was told, "That's just the way guys are." There is also evidence, however, that action was taken following some of her informal complaints. Nevertheless, we find sufficient evidence that the City knew or should have known of the alleged harassment. The evidence, as recounted by the plaintiff, reveals some of the harassment was well known to employees of the department. The cartoons were allegedly displayed throughout the department. The jokes and comments were allegedly made openly in the department. The evidence is such that the issue of employer liability must be left to the jury.

*Plaintiff Was Not the Subject of Retaliation*

The defendant contends that plaintiff has not demonstrated a claim of retaliation under Title VII. The court agrees. The court shall grant summary judgment to the defendant on this claim.

The nature of this claim is not entirely clear. On the one hand, plaintiff contends that the defendant retaliated following her employment with them by providing adverse information to the City of Shawnee Police Department when she applied for employment there. On the other hand, plaintiff asserts that the actions of Lt. Young constitute retaliation by the defendant. The court is convinced that plaintiff has not produced sufficient evidence from a factual or legal standpoint to support either of these claims.

Title VII makes it unlawful "for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this, or because he has made a charge, testified, asserted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e–3(a). In order to establish a retaliation claim under Title VII, a plaintiff initially must establish a prima facie case of retaliation by establishing "(1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the employer's adverse action." *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 985 (10th Cir.1996). Once a plaintiff succeeds in establishing a prima facie case of retaliation, the burden shifts to the employer to proffer legitimate, nondiscriminatory reasons for the termination decision. *Id.* at 986. If the employer sets forth legitimate nondiscriminatory reasons for the adverse action, the plaintiff must then establish that the defendant's reasons are merely a pretext for retaliation. *Id.* "The overall burden of persuasion remains on the plaintiff." *Sauers v. Salt Lake County,* 1 F.3d 1122, 1128 (10th Cir.1993).

■ With regard to her claim concerning her application for employment with the City of Shawnee, the court finds no evidence of any causal connection between protected activity and the adverse employment decision of the City of Shawnee. Plaintiff has no evidence to controvert the testimony of Thomas K. Hayselden, the Police Chief of the City of Shawnee at the time that plaintiff made application. Chief Hayselden has stat-

ed that plaintiff was not hired by the Shawnee Police Department because she was not a resident of the City of Shawnee. He further stated that no officer or employee of the Prairie Village Police Department ever attempted "to dissuade the City of Shawnee from employing [plaintiff]." Plaintiff acknowledged in her deposition that she has no facts to support her contention that two officers with the Prairie Village Police Department provided adverse information about her to the Shawnee Police Department. Given the lack of evidence on the causal connection between any protected activity and plaintiff's failure to receive the position with the City of Shawnee, the court must grant summary judgment to the defendant. *See Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1176 (10th Cir.1996).

With regard to plaintiff's claim concerning the treatment she received from Lt. Young, the court also finds that summary judgment is appropriate because there is no evidence of any protected activity by the plaintiff. Plaintiff contends that Lt. Young took certain actions against her because Lt. Young was jealous about plaintiff dating Lt. Young's boyfriend. Of course, such conduct does not establish protected activity under 42 U.S.C. § 2000e–3 (a). This is not the sort of retaliation contemplated by Title VII. Summary judgment is therefore also appropriate on this claim.

*Constructive Discharge*

The defendant contends that the evidence does not support plaintiff's contention that she was forced to resign as a result of an intolerable hostile environment. The defendant argues that plaintiff has admitted in her deposition that she left the police department because of the actions of Lt. Young, not the alleged sexual harassment. The defendant asserts that the actions of Lt. Young do not rise to the level of sexual harassment and, therefore, plaintiff cannot demonstrate that she was compelled as the result of an intolerable hostile environment.

An employee who is not formally discharged from employment may be constructively discharged if working conditions become so difficult that a reasonable person

would feel compelled to resign. *James v. Sears, Roebuck and Co., Inc.*, 21 F.3d 989, 992 (10th Cir.1994). As explained in *Winsor:*

> A Title VII claimant "bears the burden of proving she was constructively discharged by a preponderance of credible evidence; mere uncontroverted evidence, if not credible, is insufficient." To meet her burden, the plaintiff was required to show that she was "forced to quit due to [gender]-based intolerable working conditions."

79 F.3d at 1002 (citations omitted).

Plaintiff admitted in her deposition that she left employment with the police department due to the actions of Lt. Young. She acknowledged that she could "live with ... the sexual harassment," but she could not take the additional treatment meted out by Lt. Young. Accordingly, even if plaintiff was subject to sexual harassment while employed with the Prairie Village Police Department, the court must conclude that she left for reasons unrelated to the sexual harassment. As explained in *Bolden:* "[N]ot every unhappy employee has an actionable claim of constructive discharge. [A plaintiff must show] his resignation was the result of illegal discriminatory conduct." 43 F.3d at 552. Causation is an essential element of a plaintiff's case when attempting to prove constructive discharge. Despite a finding of intolerable working conditions, plaintiff's constructive discharge must fail if her resignation was not actually caused by the harassment. Accordingly, the defendant is entitled to summary judgment on this claim. *See Winsor,* 79 F.3d at 1002 (no constructive discharge where plaintiff resigned for reasons unrelated to sexual harassment).

**SECTION 1983**

The defendant contends that plaintiff cannot establish liability on the part of the City for a § 1983 violation. The defendant argues that there is no evidence that the alleged acts of harassment were officially sanctioned or ordered by the City. The defendant points out that the City had a policy against sexual harassment and that the evidence does not show a widespread practice or custom of sexual harassment in the police department.

 Municipalities are subject to § 1983 liability. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Sexual harassment, a form of sex discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, is actionable under § 1983. *Starrett v. Wadley,* 876 F.2d 808, 814 (10th Cir.1989). Under § 1983, the ultimate inquiry is whether the sexual harassment constitutes intentional discrimination as opposed to Title VII's inquiry into whether the harassment altered the conditions of the victim's employment.

 A city can be held liable under § 1983 only if the actions of its agents can be characterized as representing an official policy or custom. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38. As explained in *Lankford v. City of Hobart,* 73 F.3d 283, 286 (10th Cir.1996):

In order to warrant liability, a municipal policy must be a " 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers.' " *Starrett,* 876 F.2d at 818 (quoting *Monell,* 436 U.S. at 690, 98 S.Ct. at 2035–36). In the case at bar, there is no allegation nor evidence suggesting the City of Hobart had an official policy favoring sexual harassment. In fact, there is evidence the City of Hobart had a written city policy expressly forbidding it.

If the violation cannot be characterized as official policy then the City of Hobart can still be held liable if the practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 168, 90 S.Ct. 1598, 1614, 26 L.Ed.2d 142 (1970). In order to establish a custom, the actions must be "persistent and widespread ... practices of [city] officials." *Starrett,* 876 F.2d at 818 (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036). Furthermore, the official charged with sexual harassment must also have "final policy making authority" with respect to the acts in question as a matter of state law. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1299–1300, 89 L.Ed.2d 452 (1986) (plurality). In *Pemb-*

*aur,* the Court expressly limited municipal liability under § 1983 "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483–84, 106 S.Ct. at 1299–1301.

The City may also be liable based on supervisory liability. Supervisory liability under § 1983 requires allegations of personal direction or of actual knowledge and acquiescence. *Woodward v. City of Worland,* 977 F.2d 1392, 1400 (10th Cir.1992), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3038, 125 L.Ed.2d 724 (1993). Finally, the City may be liable on a failure to train theory. In order to prevail on such a claim, a plaintiff must show that a municipality's failure to train rose to the level of "deliberate indifference." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989).

 Much like the situation in *Lankford,* there is no evidence that the City of Prairie Village had a policy of favoring sexual harassment. Rather, again as in *Lankford,* the City had a policy expressly forbidding it. However, as to the other theories of employer liability, the court is convinced that genuine issues of material facts remain in dispute. There is evidence, when viewed in the light most favorable to the plaintiff, that sexual harassment was widespread in the police department. This evidence suggests that the City knew or should have known about this conduct. *See Farris v. Board of County Commissioners of Wyandotte County,* 924 F.Supp. 1041, 1049 (D.Kan.1996); *see also Bohen v. City of East Chicago,* 799 F.2d 1180, 1189 (7th Cir.1986). Finally, the evidence concerning the training offered by the City on sexual harassment is not clear. There is evidence from some officers that no training occurred in the department and that they were unaware of any existing procedures for handling sexual harassment complaints. The court concludes that the defendant is not entitled to summary judgment on plaintiff's equal protection claim brought under § 1983. Nevertheless, the court intends

to closely examine this claim at trial to determine if it will be sent to the jury.

## OUTRAGE CLAIM

The defendant argues that it is entitled to summary judgment on this claim for two reasons. First, the defendant contends that the plaintiff failed to provide the City with the requisite notice under K.S.A. 12–105b(d) prior to initiating this lawsuit. Second, the defendant asserts that plaintiff has not shown facts sufficient to justify an outrage claim because the record does not show that the defendant's conduct was extreme and outrageous, and plaintiff has not suffered severe emotional distress.

■ The first issue presents an interesting question. Under Kansas law, "[a]ny person having a claim against a municipality which could rise to an action brought under the Kansas tort claims act shall file a written notice provided in this subsection before commencing such action." K.S.A. 12–105b(d). "The notice requirements in § 12–105b(d) are mandatory and a condition precedent to bringing a tort claim against a municipality." *Miller v. Brungardt*, 904 F.Supp. 1215, 1217 (D.Kan.1995).

Subsection (d) of K.S.A. 12–105b requires that notice of a claim be filed with "the clerk or the governing body of the municipality." This subsection further provides: "In the filing of a notice claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim."

On April 1, 1994, plaintiff's former counsel sent a letter to the City Attorney for the City of Prairie Village indicating that plaintiff intended to pursue claims against the City under Title VII and the Kansas blacklisting statute. The letter detailed her allegations of sexual harassment while she was employed with the City. The letter suggested an amount that plaintiff would be willing to accept to avoid litigation.

The defendant has pointed out that the plaintiff's notice (1) was not served on the Clerk or the governing body of Prairie Village as required by K.S.A. 12–105b(d); and (2) contained no mention of her outrage claim or any request for emotional damages.

■ The court has not discovered a case in which Kansas courts have considered whether notice to the City Attorney is sufficient to comply with the requirements of the K.S.A. 12–105b. However, in several older cases involving a statute similar to K.S.A. 12–105b, the Kansas courts have concluded that notice filed with the Clerk is a condition precedent to filing an action against a municipality, and the fact that city officials may be aware of the incident or the claim would not enable such officials to waive the requirements of the statute. *See Howell v. City of Hutchinson*, 177 Kan. 722, 282 P.2d 373, 377 (1955); *Dechant v. City of Hays*, 112 Kan. 729, 212 P. 682 (1923).

Other states that have similar notice requirements have considered the issue of whether service of the notice on a City Attorney substantially complies with the notice statute. These courts have reached differing results. Compare *Long v. Knoxville*, 62 Tenn.App. 665, 467 S.W.2d 309 (1970) (letter to city attorney was insufficient to comply with notice statute that required notice to mayor); *McGuire v. Hennessy*, 292 Minn. 429, 193 N.W.2d 313 (1971) (notice of claim sent to city attorney was inadequate to comply with notice statute that required notice to governing body) with *Jenkins v. City of Wilmington*, 45 N.C.App. 528, 263 S.E.2d 343 (1980) (notice of claim sent to city attorney and city manager was sufficient where notice statute required notice to city council).

Given the Kansas law on this issue, although it is not directly on point, we are persuaded by the defendant's argument. The Kansas statute is worded clearly, and we do not find that notice sent to the City Attorney constitutes substantial compliance with its requirements. The decisions by the Kansas Supreme Court in Howell and Dechant suggest this result. Accordingly, we find that the defendant is entitled to dismissal of plaintiff's intentional infliction of emotional distress claim.

■ Even if we found that the plaintiff had properly filed her claim under K.S.A. 12–105b, we do not find that the plaintiff's notice

adequately advised the defendant of plaintiff's claim for intentional infliction of emotional distress. The letter written by plaintiff's counsel to the City Attorney makes no mention of this claim. The letter also makes no mention of seeking damages for emotional distress.

Recently, in *Mitchell v. Coffey County,* 903 F.Supp. 1415 (D.Kan.1995) and *Miller v. Brungardt,* 904 F.Supp. 1215 (D.Kan.1995), the Kansas federal courts considered the issue of whether a plaintiff had provided adequate notice under K.S.A. 12–105b. In Mitchell, the plaintiff had notified the county that he believed that his termination constituted breach of contract and a denial a due process. The notice failed to mention retaliatory discharge or any facts supporting such a claim. This court dismissed this claim, finding that his notice did not substantially comply with K.S.A. 12–105b. In *Miller,* the plaintiff had filed formal complaints of sexual harassment and retaliatory discharge with the Equal Employment Opportunity Commission prior to filing a complaint in federal court which included Title VII claims and an intentional infliction of emotional distress claim. In response to a motion to dismiss the state law claim for failure to comply with K.S.A. 12–105b, plaintiff argued that the complaints she filed with EEOC constituted notice to the defendant under K.S.A. 12–105b. The court disagreed, finding that the plaintiff's asserted notice did substantially comply with the notice statute because it did not contain any mention of the claim for intentional infliction of emotional distress or assert any request for an amount of monetary damages. 904 F.Supp. at 1218.

In accord with *Mitchell* and *Miller,* we must also dismiss plaintiff's claim of intentional infliction of emotional distress for failure to adequately advise the defendant of this claim. We note that plaintiff has specifically acknowledged that her letter does not comply with the requirements of *Miller.* Thus, for the aforementioned reasons, the court shall grant summary judgment to the defendant on this claim. With these rulings, the court need not consider whether plaintiff has shown facts sufficient to justify an outrage claim.

DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF JAMES BANNON PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT WITNESSES

Both sides have filed motions to exclude the expert testimony that the other side seeks to offer. Both sides contend that the opposing experts are unqualified to provide expert testimony and that their proposed expert testimony is either irrelevant, improper or not reliable.

Defendant seeks to exclude the testimony of James Bannon. Bannon is a retired police officer and former deputy chief of the Detroit, Michigan Police Department. Bannon will render opinions, *inter alia,* that (1) the Prairie Village policy for sex discrimination is deficient; (2) the Prairie Village policy for investigating complaints is deficient; and (3) Prairie Village failed to adequately train its work force on the policy and legal requirements of Title VII.

The defendant contends that Bannon is not qualified to serve as an expert on sexual harassment issues. The defendant argues that he has no specialized training or experience in this area. The defendant further argues that his testimony would not assist the trier of fact. The defendant points out the issue of whether sexual harassment occurred and whether any investigation was undertaken and what certain individuals knew is not so technical as to require expert testimony. Finally, the defendant asserts that Bannon's testimony is not reliable because of his failure to consider all of the depositions and documents in this case.

Plaintiff counters that Bannon is qualified to render these opinions and that the opinions would assist the trier of fact. Plaintiff points out that Bannon has sufficient experience and education to offer expert opinion on proper police internal procedures and practices when dealing with complaints of sexual harassment. Plaintiff further suggests that Bannon's opinion is reliable and that the defendant is aware of the information that he has considered. Plaintiff contends that the defendant's arguments in this area go to the weight of the testimony, not its admissibility.

In response to the plaintiff's designation of an expert witness, the defendant designated A.J. Kotich and Dr. Georgia Nesselrode. Kotich is the chief legal counsel for the Kansas Department of Human Resources and Special Assistant Attorney General for the State of Kansas. He has taught legal and undergraduate courses on labor law, employment law, labor relations and human resource management. He will testify concerning the adequacy of Prairie Village's sexual harassment policy.

Dr. Nesselrode will offer an opinion on the training provided by the City of Prairie Village. She is presently the program manager of the Mid–America Regional Council, which is a government training institute. Part of her present job is to develop and implement training programs for local government employees. She previously worked in the Johnson County District Attorney's Office as the director of victim assistance/community development. Specifically, she will testify that the training offered by Prairie Village and the police department is adequate on "relevant topics to their profession." She will also testify that "[t]he training performed in the specific area of sexual harassment policy and employee sensitivity is also adequate."

Plaintiff seeks to exclude the testimony of Kotich and Dr. Nesselrode. She argues that Kotich's opinion constitutes a legal conclusion by an employment lawyer on a key issue— the adequacy of Prairie Village's policies on sexual harassment—and thus should be excluded. She argues that Dr. Nesselrode may be an appropriate fact witness—because she has indicated that she has worked with the law enforcement community in Johnson County for a number of years and that she is familiar with the individuals who provided training for Prairie Village on sexual harassment—but she should not be allowed to testify as an expert. Plaintiff suggests that Dr. Nesselrode has personal knowledge of these training programs and has a professional stake in the adequacy of the programs.

The defendant counters that Kotich's opinion is proper because the sufficiency of the City's sexual harassment policy is a key issue in this case. The defendant points out that the opinion sought to be offered by Kotich is on the same subject matter as that to be offered by plaintiff's expert witness. The defendant argues that "[i]t is truly mind boggling that Plaintiff believes that Bannon, who is not trained in the area of human resources nor in the law, can opine as to the sufficiency of sexual harassment policies but a highly qualified and trained employment attorney cannot opine to the identical issue."

The defendant notes that plaintiff seeks to exclude the testimony of Dr. Nesselrode because of her personal knowledge regarding the development and implementation of the training courses at issue. The defendant notes that plaintiff cites no support for this proposition. As to both of these witnesses, the defendant argues that it would be unfair to allow the plaintiff to offer evidence on these issues through an expert and not allow it an opportunity to rebut that testimony.

The admissibility of expert testimony is governed by Fed.R.Evid. 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■■■ "[T]he 'touchstone' of admissibility [under Rule 702] is helpfulness to the trier of fact." *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir.1991). The degree of "knowledge, skill, experience, training, or education" sufficient to qualify an expert witness is only that necessary to insure that the witness's testimony "assist" the trier of fact. *Mannino v. International Mfg. Co.*, 650 F.2d 846, 851 (6th Cir.1981). The determination of whether expert testimony should be admitted rests within the sound discretion of the trial court. *United States v. Holsey*, 995 F.2d 960, 962 (10th Cir.1993).

■■ The court notes initially that there is very little guidance in the caselaw on the use of expert testimony in sexual harassment cases. Compare *Lipsett v. University of Puerto Rico*, 740 F.Supp. 921, 925 (D.P.R. 1990) (in jury trial, court refuses to allow testimony of social worker and social psychologist on whether sexual harassment or a

hostile work environment was present, holding that to do so would usurp the fact-finding duties of jury) with *Robinson v. Jacksonville Shipyards, Inc.,* 760 F.Supp. 1486, 1507 n. 4 (M.D.Fla.1991) (in court trial, court allows expert in psychology to testify in field of sexual stereotyping and social worker to testify on subject of common patterns and responses to sexual harassment). There is little question that the determination of whether to allow expert testimony in a given case requires a close examination of the facts coupled with the proposed testimony from the expert witness.

Frankly, the court is not enthusiastic about any of the proposed expert testimony. The court has some concerns about the qualifications of some of the experts, the relevancy of some of the testimony, and the necessity of some of the testimony. Nevertheless, we believe it would be premature to exclude this testimony at this time. The court has been presented with only the broad parameters of the content of these experts' testimony. The court believes that it would be better to conduct a hearing prior to trial and consider this evidence before determining whether to exclude it. Therefore, at this time, the court shall deny these motions. The court shall schedule a hearing just prior to trial to consider the testimony of these experts.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. # 78) be hereby granted in part and denied in part.

**IT IS FURTHER ORDERED** that defendant's motion in limine to exclude testimony by James Bannon (Doc. # 76) be hereby denied.

**IT IS FURTHER ORDERED** that plaintiff's motion in limine to exclude testimony by defendant's designated experts (Doc. # 88) be hereby denied.

**IT IS SO ORDERED.**