**Douglas C. TANK, Executor and Administrator of the Estate of Kathleen Tank, Deceased, Plaintiff,**

**v.**

**Bert CHRONISTER, M.D.; and Board of Trustees of Wilson County Hospital, d/b/a Wilson County Hospital, Defendants.**

**No. 95–1539–JTM.**

United States District Court,
D. Kansas.

June 6, 1996.

. Lynn R. Johnson and Anthony L. DeWitt, of Shamberg, Johnson & Bergman, Overland Park, KS, for plaintiff.

Phillip P. Ashley, of Williamson & Cubbison, Kansas City, KS, for defendant Chronister.

Wayne T. Stratton and David E. Bruns, of Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for defendant Board of Trustees of Wilson County Hospital.

### MEMORANDUM AND ORDER

MARTEN, District Judge.

On May 4, 1995, Kathleen Tank was taken by her husband Douglas to the Wilson County Hospital Emergency Room for shortness of breath. A nurse admitted Tank and took her vital signs, which indicated a rapid respiratory rate of 44 and low blood pressure. The nurse telephoned Dr. Bert Chronister, who came to the emergency room and did a gram stain and sputum culture. Chronister made a diagnosis of tracheobronchitis and discharged her. Douglas Tank had called Chronister's office earlier that day, but Chronister refused to see Mrs. Tank because of an outstanding bill. At the emergency room, Chronister allegedly told Douglas Tank that "this would have been a lot less expensive . if you had come to my office." Kathleen Tank was found dead early the next morning of massive lobar pneumonia.

Douglas Tank has brought the present action against the hospital and Dr. Chronister, alleging both medical malpractice under state law under diversity of citizenship jurisdiction, as well as violations of federally-protected rights. The hospital has moved for dismissal of all claims raised by the plaintiff. The court has reviewed the pleadings submitted by the parties and finds oral argument is unnecessary for the resolution of the issues raised by the hospital's motion. For the reasons identified herein, the hospital's motion is denied in part, and granted in part.

### A. EMTALA Action

■ The hospital first seeks dismissal of Tank's action under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd. EMTALA was enacted to combat the hospital practice of "dumping" indigent patients in need of emergency medical treatment, *Brooks v. Maryland General Hosp.*, 996 F.2d 708, 710 (4th Cir.1993), and is designed to ensure an " 'adequate first response to a medical crisis' for all patients." *Baber v. Hospital Corp. of America*, 977 F.2d 872, 880 (4th Cir.1992) (quoting Sen. Robert Dole, 131 Cong.Rec. S13904 (Oct. 23, 1985)). To achieve this purpose, the statute creates a cause of action against hospitals which fail to appropriately screen or stabilize patients. *Evans v. Montgomery Hosp. Med. Ctr.*, Case No. 95–5039, 1996 WL 221526 (E.D.Pa. May 1, 1996). Under 42 U.S.C. § 1395dd(d)(2)(A), a person injured by a violation of the Act may bring an action for personal injury against the hospital.

EMTALA has two main provisions which are potentially applicable here. First, the hospital must conduct an "appropriate medical screening examination" to determine if the patient has an emergency medical condition. 42 U.S.C. 1395dd(a). Second, if hospital personnel discover such an emergency condition, the Act requires the hospital to stabilize the patient before transferring the patient elsewhere. Section 1395dd(b)(1)(A) creates a duty for the hospital

to stabilize the emergency medical condition with which the patient initially pres-

ents to such a point that it will not materially deteriorate during, or as a result of, transfer from the first hospital to another one.

*Hussain v. Kaiser Found'n Health Plan,* 914 F.Supp. 1331, 1334 (E.D.Va.1996).

■ EMTALA is "neither a malpractice nor a negligence statute." *Repp v. Anadarko Mun. Hosp.,* 43 F.3d 519, 522 (10th Cir. 1994) (quoting *Urban By and Through Urban v. King,* 43 F.3d 523, 526 (10th Cir. 1994)); *Collins v. DePaul Hosp.,* 963 F.2d 303, 307 (10th Cir.1992); *Griffith v. Mt. Carmel Med. Ctr.,* 831 F.Supp. 1532, 1539 (D.Kan.1993); *Gossling v. Hays Med. Ctr.,* 1995 WL 254269 (D.Kan.1995). The statute "does not authorize an action against a hospital for misdiagnosis." *Cunningham v. Fredonia Regional Hosp.,* 1995 WL 580055 *2–3 (D.Kan.1995). A claim alleging misdiagnosis remains a matter for state malpractice law. *Vickers v. Nash Gen. Hosp.,* 78 F.3d 139 (4th Cir.1996). Rather, the Act was intended to create a wholly new cause of action, separate and distinct from traditional state medical malpractice claims. *Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1041 (D.C.Cir.1991). Thus, it has been held that inserting into EMTALA an action for violation of standard medical procedures for patients admitted and treated for several hours would convert the statute "into a federal malpractice statute, something it was never intended to be." *Hussain v. Kaiser Found'n Health Plan,* 914 F.Supp. 1331, 1335 (E.D.Va.1996).

■ The "appropriate screening examination" prong of EMTALA is designed to ensure that hospitals create screening procedures which they apply "to all individuals coming to the emergency room." *Matter of Baby K.,* 16 F.3d 590, 595 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 91, 130 L.Ed.2d 42 (1994). The law obliges a hospital to create standard emergency room screening procedures based upon the hospital's particular needs and circumstances. *Repp v. Anadarko Mun. Hosp.,* 43 F.3d 519, 522 (10th Cir.1994). EMTALA imposes strict liability upon a hospital that creates screening procedures but fails to apply the essential elements of those procedures. *See*

*id.* at 523 (hospital not liable for *de minimis* departures from procedure). In resolving a claim of failure to screen under EMTALA, "[a] court should ask only whether the hospital adhered to its own procedures, not whether the procedures were adequate if followed." *Id.* at 522 n. 4.

In *Vickers,* the Fourth Circuit recently concluded it was not sufficient merely to allege that the patient would have had different treatment if he had received a different diagnosis, since this would permit all misdiagnosis claims to be "automatically ... recast as a claim under the Act." *Vickers,* 78 F.3d at 141. The patient in *Vickers* was involved in a fight when he fell and suffered a blow on the head. An emergency room physician treating Vickers diagnosed him as suffering from head "laceration and contusions and multiple substance abuse." *Id.* The doctor sutured the laceration and had X-rays done of the spine. Vickers was released after 11 hours, and instructed to report back 10 days later to have the sutures removed. No testing for intercranial injury was performed. Four days later, the patient was found dead, the victim of "cerebral herniation and epidural hematoma produced by a fracture of the left parietal area of Vickers' skull." 78 F.3d at 141.

The Fourth Circuit affirmed the dismissal of the claim made by Vickers' estate under both prongs of EMTALA. The court acknowledged the estate may have a claim under state malpractice law, but not under EMTALA. Such a claim would exist, according to the court, only if it were alleged the hospital gave different treatment from other patients who were "perceived to have the same medical condition." *Id.* at 145. According to the court:

> EMTALA is implicated only when individuals who are perceived to have the same medical condition receive disparate treatment; it is not implicated whenever individuals who turn out in fact to have had the same condition receive disparate treatment.

*Id.* at 144.

The estate's "failure to stabilize" claim under § 1395dd(b)(1) failed for the same rea-

son. The court ruled this provision "takes the actual diagnosis as a given, only obligating hospitals to stabilize conditions that they actually detect." *Id.*, citing *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1259 (9th Cir.1995); *Baber v. Hospital Corp.*, 977 F.2d 872, 883 (4th Cir.1992); *Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1041 (D.C.Cir.1991).

Plaintiff Tank attacks *Vickers* as an aberration and asks the court to not apply that decision here. The court disagrees, and finds *Vickers* represents a natural statement of the evolving law on EMTALA—one which is impossible to separate from Tenth Circuit law on the subject. Ultimately, the Fourth Circuit's decision in *Vickers* rests on the concern expressed previously by that court in *Baber*, 977 F.2d at 879, that imposing a standard based upon what the hospital *should* have diagnosed, as opposed to what it actually *did* diagnose, would transform the separate and distinct EMTALA remedy into a federalized malpractice action.

In reaching this conclusion, the *Vickers* court not only cited its 1992 decision in *Baber*, but also decisions from other circuits holding EMTALA should not be permitted to devolve into a general malpractice action, including a citation to the Tenth Circuit's decision in *Repp v. Anadarko Mun. Hosp.*, 43 F.3d 519 (10th Cir.1994). In turn, the Tenth Circuit in *Repp* had also relied upon decisions from other circuits, including the Fourth Circuit's decision in *Baber*, for the principle that EMTALA's language "precludes the adoption of a standard tantamount to a federal malpractice statute." 43 F.3d at 522 (other citations omitted).

Moreover, on the day following its decision in *Repp*, the Tenth Circuit filed its decision in *Urban by and Through Urban v. King*, 43 F.3d 523, 526 (10th Cir.1994), in which the court interpreted subsection (c) of EMTALA (42 U.S.C. § 1395dd(c)) to require "actual knowledge of the emergency medical condition." *Urban* involved an action under subsection (c), which creates requirements for transferring a patient with an emergency medical condition, rather than a claim of failure to screen, but the results are applicable to other portions of the Act. The Tenth

Circuit noted in *Urban*, in response to the plaintiffs' argument that subsection (c) has no explicit knowledge requirement:

> However, *we must read a statute as a whole to understand its context* [and do not] agree that each subsection must be interpreted independently of the others. Subsection (b) is explicitly linked to subsection (c), and the application of subsection (c) depends on the language of subsection (b).

*Id.* at 526. The court also rejected plaintiffs' argument (made here by plaintiff Tank) that imposing an actual knowledge requirement would license improper care, since state malpractice remedies would still be available. *Id.* at 527. *See also Green v. Reddy*, 918 F.Supp. 329, 335 (D.Kan.1996) ("stabilization or transfer" provisions of EMTALA require actual knowledge of emergency medical condition).

■ In short, *Vickers* is not an aberration, but a decision well grounded within existing law. The court will dismiss plaintiff's EMTALA action. When the allegations advanced by plaintiff are sorted through, there is no allegation that the hospital or Chronister actually knew Kathleen Tank had pneumonia. Rather, the plaintiff seeks to present a case to the jury through evidence of malpractice, based upon what Chronister should have inferred from Tank's respiratory symptoms. This would allow precisely the sort of result—the federalization of malpractice claims—that the case law has sought to avoid.

Nor does the allegation that Chronister told the Tanks it would have been less expensive to treat Mrs. Tank's condition earlier support the EMTALA claim here. Assuming this comment was made, it cannot alone justify the continued maintenance of this claim. The desire to control costs is pervasive in modern medicine. To permit the plaintiff's EMTALA claim to proceed on the basis of Dr. Chronister's alleged remark would set a standard which would permit virtually any claim of medical malpractice to be brought as a federal EMTALA action. Absent evidence or allegation that defendants actually knew of Mrs. Tank's medical

condition, the EMTALA claim must be dismissed.

Moreover, while Tank alleges at various points the hospital failed to follow its own screening procedures, a close reading of the briefs indicates that beyond the general contentions of what screening *should* have been performed, the only actual hospital procedure which was deviated from was the failure of the attending nurse to recheck Kathleen Tank's vital signs, since they exceeded a certain level. But while the hospital's policy may require a second reading, there is no suggestion that the first was inaccurate. In this context the case is similar to *Repp*, where the nursing staff did not follow established procedure by obtaining a complete medical history and asking specific questions about the medicines prescribed to the patient. The Tenth Circuit ruled this did not represent a violation of EMTALA, since the substance of the patient's medical history was nonetheless made known to the hospital:

Mere *de minimis* variations from the hospital's standard procedures do not amount to a violation of hospital policy. To hold otherwise would impose liabilities on hospitals for purely formalistic deviations when the policy had been effectively followed. .... Even though the nurses did not ask specific questions about these items, they received information on each subject.... These minimal variations from the hospital's emergency room policy did not amount to a violation of the hospital's standard screening procedures.

43 F.3d at 523.

Here, the policy providing for follow-up readings of vital signs is designed to exclude false first readings of a serious medical emergency. The initial readings of Kathleen Tank taken by the nursing staff are not alleged to be false, but rather, to be accurate. Ultimately, the allegations of the plaintiff, although repeatedly translated into the language of EMTALA, return to a classic case of medical malpractice: that Chronister and the hospital failed to give Kathleen Tank the medical care she should have received. Because the facts alleged by plaintiff do not fall within the scope of EMTALA, that claim should be dismissed.

### B. *Section 1983 Claim*

■ The plaintiff has also advanced a claim against the hospital for violation of 42 U.S.C. § 1983, for failure to provide medical care. The court finds plaintiff's § 1983 claim is wholly unsupported in the law. The Supreme Court has stated that "a State is under no constitutional duty to provide substantive services for those within its border." *Youngberg v. Romeo*, 457 U.S. 307, 317, 102 S.Ct. 2452, 2459, 73 L.Ed.2d 28 (1982). Thus, courts have consistently found there is "no general right, based upon either the Constitution or federal statutes, to the provision of medical treatment and services by a state or municipality." *Wideman v. Shallowford Comm. Hosp.*, 826 F.2d 1030, 1032 (11th Cir.1987). *See Maher v. Roe*, 432 U.S. 464, 469, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 484 (1977) (disapproving financial need as a basis for creating suspect class for indigent women seeking access to abortion services).

The only exceptions to this general rule involve persons who are in the custody of the state or otherwise in special need of state care and protection. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (prisoners); *DeShaney v. Winnebago County Department of Soc. Serv.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (involuntarily committed mental patients). The plaintiff provides no authority which would support a finding that states and municipalities are constitutionally required to provide medical services for citizens. Accordingly, plaintiff's § 1983 claim should be dismissed.

### C. *Notice*

Finally, the hospital makes an extensive argument that the EMTALA and state medical malpractice claims should be dismissed because the plaintiff failed to comply with K.S.A. 12–105b(d), providing for prior notice of claims to municipalities and their agencies. The plaintiff makes an even more extensive response, arguing that the hospital waived the requirements of the statute, that federal law precludes application of K.S.A. 12–105b to the EMTALA claims, and that in any

event there was substantial compliance with the provisions of the notice statute.

█ Having reviewed all the arguments, the court finds that the plaintiff substantially complied with the terms of the notice statute. Because the court must independently dismiss the EMTALA claims, it not need address the potential applicability of the state notice provisions to the federal EMTALA claims.[1]

█ Prior to filing the present action, the plaintiff filed a separate action against the hospital to preserve access to Kathleen Tank's medical records, and this action and the associated pleadings serve as notice that an action for damages would follow. By its express terms, the notice statute requires only substantial compliance:

> The notice shall be filed with the clerk or governing body of the municipality and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested. In the filing of a notice of claim, *substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim.*

K.S.A. 12–105b(d) (emphasis added). "Substantial compliance" under Kansas law means "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." *City of Lenexa v. City of Olathe*, 233 Kan. 159, 164, 660 P.2d 1368 (1983). The notice statute at issue here requires that a claimant "makes an attempt to state each element required of the notice." *Wiggins v. Housing Auth. of Kansas City*, 19 Kan.App.2d 610, 613, 873 P.2d 1377, *rev. denied*, 255 Kan. 1007 (1994), (citing *Tucking v. Board of Jefferson County Com'rs*, 14 Kan.App.2d 442, 796 P.2d 1055, *rev. denied*, 246 Kan. 770 (1990)).

In both *Wiggins* and *Tucking*, the court found the plaintiff had failed to provide any statement as to one or more of the key elements required by the statute. *See Wiggins*, 19 Kan.App.2d at 613, 873 P.2d 1377 (all elements stated in notice "except the second element, requiring a concise statement of the factual basis of the claim"); *Tucking*, 14 Kan.App.2d at 447, 796 P.2d 1055 ("Tucking's notice entirely neglected two elements[:] ... the amount of monetary damages Tucking claimed or the type of injury she suffered. Her compliance with the other elements was partial.").

In the present case, by contrast, through the pleadings submitted by counsel for Tank in connection with the action for injunctive relief and through other correspondence, the administrators of defendant hospital were presented with information relevant to all of the key elements of K.S.A. 12–105b(d): the identity and addresses of the parties involved, the nature of the incident, the injury suffered, and that a substantial claim for damages would be advanced. Thus, the hospital and its agents were given information relating to all of the elements cited in K.S.A. 12–105b(d). The plaintiff here clearly fulfilled the purpose of the statute by giving a clear indication to the hospital of the claim that would be raised against it, along with information which would allow the hospital to adequately investigate the basis for that claim.

IT IS ACCORDINGLY ORDERED this 6th day of June, 1996, that defendant hospital's motion to dismiss (Dkt. No. 27) is hereby granted as to plaintiff Tank's federal

---

1. There is a division of authority on the subject. *Draper v. Chiapuzio*, 9 F.3d 1391 (9th Cir.1993), held that an Oregon statute similar to K.S.A. 12–105b(d) applied to bar a claim under EMTALA. There is one district court decision diametrically opposed, *Bowen v. Mercy Mem. Hosp.*, 1995 WL 805189 (E.D.Mich.1995), holding that Michigan's notice of claim statute had no application in a federal EMTALA claim. There is language in a recent decision of this court, *Gossling v. Hays Med. Ctr.*, 1995 WL 254269 at *7 (D.Kan. Apr. 21, 1995), which cites *Draper* with approval and discusses K.S.A. 12–105b(d) in the context of an EMTALA claim.

claims, and denied as to the claim for medical malpractice.