(985 P.2d 715)

No. 80,538

DARCY MATTHEW SMITH, *Appellant,* v. MICHAEL L. KENNEDY, M.D., and BOARD OF TRUSTEES OF COFFEY COUNTY HOSPITAL, *Appellees.*

Opinion filed August 6, 1999.

*Stephen N. Six* and *Victor A. Bergman,* of Shamberg, Johnson & Bergman, Chtd., of Overland Park, for appellant.

*Wayne T. Stratton* and *Anne M. Kindling,* of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, for appellee Michael L. Kennedy, M.D.

*Jeffrey W. Jones* and *Thomas L. Theis,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, L.L.C., of Topeka, for appellee Board of Trustees of Coffey County Hospital.

Before GREEN, P.J., PIERRON, J., and DAVID PRAGER, Chief Justice Retired, assigned.

GREEN, J.: This case involves a medical negligence action. Darcy Matthew Smith initially sued Michael L. Kennedy, M.D., and Coffey County Hospital (CCH), claiming that they negligently treated him for injuries he received in a motorcycle accident. Smith later filed an amended petition replacing CCH as a defendant with the Board of Trustees of the Coffey County Hospital (Board). The Board moved to dismiss the action, maintaining that Smith had failed to comply with the claim provision statute of K.S.A. 12-105b. Agreeing that Smith had failed to comply with the statute, the trial court dismissed the action without prejudice as to Kennedy and

the Board. On appeal, Smith argues that because the requirements of K.S.A. 12-105b were fully satisfied, the trial court erred in dismissing his action. We reverse.

The facts of this case are undisputed. On August 12, 1995, Smith was injured in a motorcycle accident. He was initially treated by Kennedy at CCH. Later, he was taken to the KU Medical Center where his right leg was amputated.

Alleging negligent treatment at CCH, Smith sent identical notices of claim to Vernon Birk, Coffey County Clerk, and Dennis George, chief executive officer of CCH. The notices were dated December 10, 1996. On May 5, 1997, Smith sued CCH and Kennedy in his capacity as a hospital employee. On July 25, 1997, Smith filed an amended petition, substituting the Board as a named defendant for CCH.

On August 12, 1997, Smith faxed a notice of claim to the chairman of the Board. Although the trial court determined that this notice to the Board was valid, the trial court concluded that it was ineffective because there was no showing that the Board had denied the claim or that 120 days had elapsed before the amended petition was filed. The trial court determined that this condition precedent must be met before a party may file a tort claim against a municipality.

In addition, the trial court determined that the December 10, 1996, notices to Birk and George were inadequate. Because the August 12, 1997, notice to the Board is currently an issue in federal court, it will not be addressed by this court.

On appeal, Smith argues that the trial court erred in dismissing his claims because the notices to Birk and George comply with the statute's requirements or alternatively constitute substantial compliance. This issue raises a question of statutory interpretation, which is a question of law over which this court has unlimited review. *King v. Pimentel*, 20 Kan. App. 2d 579, 589, 890 P.2d 1217 (1995); *Tucking v. Board of Jefferson County Comm'rs*, 14 Kan. App. 2d 442, 444, 796 P.2d 1055, *rev. denied* 246 Kan. 770 (1990).

K.S.A. 12-105b provides, in relevant part:

"(d) Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as

provided in this subsection before commencing such action. *The notice shall be filed with the clerk or governing body of the municipality* and shall contain the following: (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employees involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested. *In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim.*" (Emphasis added.)

K.S.A. 12-105a defines municipality and governing body as follows:

"(a) 'Municipality' means and includes county, township, city, school district of whatever name or nature, community junior college, municipal university, drainage district, cemetery district, fire district, and other political subdivision or taxing unit, and including their boards, bureaus, commissions, committees and other agencies, such as, but not limited to, library board, park board, recreation commission, hospital board of trustees having power to create indebtedness and make payment of the same independently of the parent unit.

"(b) 'Governing body' means and includes the board of county commissioners, the governing body of a city, the township board (trustee, clerk and treasurer), board of education or other governing body of a school district, board of trustees of a community junior college, board of regents of a municipal university, the body of a special district (such as a drainage, cemetery, fire or other) which has the power to create indebtedness and is charged with the duty of paying the same, and the board, bureau, commission, committee or other body of an independent agency of a parent unit."

The parties agree that the notice requirements in K.S.A. 12-105b(d) are mandatory and a condition precedent to bringing a tort claim against a municipality. See 14 Kan. App. 2d at 445. However, the parties disagree as to whether Smith met the notice requirements by serving notices upon Birk and George. At the hearing on the motions to dismiss, the Board argued, and the trial court agreed, that as defined in K.S.A. 12-105a, the Board is both a municipality and its own governing body. Smith argues that this conclusion is erroneous and insists that the Board of County Commissioners is the governing body of the Board. Maintaining in his brief that the Board cannot govern itself and that it must, therefore, be governed by the Board of County Commissioners, Smith stated:

"K.S.A. § 12-105a defines 'municipality' to include a 'hospital board of trustees.' Tl us, the Board of Trustees of Coffey County Hospital as a 'municipality' is entitled to K.S.A. § 12-105b notice. The statute states that "'governing body" means and includes the board of county commissioners.' K.S.A. § 12-105a. Thus, the Coffey County Commissioners are a governing body. The K.S.A. § 12-105a definition of a 'governing body,' however, does not list a 'hospital board of trustees' which is defined as a municipality. K.S.A. § 12-105a includes 'hospital board of trustees' in the definition of 'municipality' but omits a similar reference in the definition of 'governing body'. Thus, the statutory scheme recognizes that there has to be some other entity which governs the board of trustees of a hospital. That 'governing body' is the entity which set up the trustees and which provides for the board's compensation—the board of county commissioners.

"K.S.A. § 19-4605 provides that the county commissioners shall appoint or provide for the election of a hospital board, and K.S.A. § 19-4609 provides that the board of county commissioners provides for hospital board members' compensation. The county commissioners established, set up and managed the defendant hospital board of trustees and the commissioners are clearly the governing body of the board of trustees of Coffey County Hospital.

. . . .

"*K.S.A. § 19-4601(c) provides that the daily management of the hospital is controlled by the board of trustees of the hospital. Therefore, the trustees control the hospital. . . . Clearly the board of trustees, a municipality, is not the governing body of the board of trustees. The trustees cannot govern themselves.* In defining governing body of a municipality, K.S.A. § 12-105a contemplates an outside entity which would govern the hospital board of trustees . . . . *The county commissioners are responsible for creating, setting up, appointing and compensating the board of trustees of the hospital.* Clearly they have the power to create and do away with the board of trustees and are the governing body as defined under K.S.A. § 12-105a . . . .

"Plaintiff provided written notice to Vernon Birk, Clerk of the Coffey County Board of Commissioners, on December 11, 1996. Service of written notice on the clerk of the board of county commissioners is service on the 'governing body' of the Board of Trustees of Coffey County Hospital and provides adequate notice as required by K.S.A. § 12-105b." (Emphasis added.)

Conversely, the Board argues that the plain language of K.S.A. 12-105a(b) makes it CCH's "governing body." In addition, the Board argues that K.S.A. 12-105a(a) makes it a "municipality." Under K.S.A. 12-105a(a), a municipality includes a county and also includes its "hospital board of trustees having power to create indebtedness and make payment of the same independently of the parent unit." K.S.A. 12-105a(b) defines a governing body as "the

board of county commissioners . . . or other body of an independent agency of a parent unit."

Although K.S.A. 12-105a(a) specifically mentions hospital board of trustees, K.S.A. 12-105a(b) fails to mention a hospital board of trustees. A hospital board of trustees, however, does fit within the definition of governing bodies listed in the final clause of K.S.A. 12-105a(b). When a statute is plain and unambiguous, this court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. *State v. Gonzales*, 255 Kan. 243, 249, 874 P.2d 612 (1994). Based upon the statutory language, the trial court correctly concluded that the Board is CCH's governing body.

Nevertheless, Smith argues alternatively that his notices to Birk and George constitute substantial compliance with K.S.A. 12-105b(d) and quotes *Cook v. Topeka*, 75 Kan. 534, 536, 90 Pac. 244 (1907), for support. In *Cook*, the claimant filed a notice of claim in which he misdescribed the location of his injury. The *Cook* court held that the notice achieved the statutory purpose notifying the city of the claim and, thus, the claimant had sufficiently complied with the statute. The court explained:

"The object of filing this statement is to inform the city of the accident, and the place in the street where it occurred, that the city may remove the obstruction from the street or alley or mend the place causing the accident, and also to give the city an opportunity to ascertain the extent of the complainant's injuries and the incidents attending the happening of the accident while the occurrence is fresh in the minds of those who possess information on the subject.

"*The statement filed in this case was defective in its description of the place where the accident happened, but in that respect it was sufficient to challenge the attention of the city, for it immediately instituted an investigation, which resulted in definitely locating the place where the accident happened*, and it removed from the alley the obstruction which caused the plaintiff's wagon to overturn. After having definitely located the place and removed the obstruction the city considered and rejected the plaintiff's claim as for an injury sustained by his wagon's having been overturned by coming in contact with an obstruction in the alley next east of Washburn avenue, about 100 feet from Twelfth street. This is where the accident occurred.

"The statute requiring a statement to be filed with the clerk is mandatory; that is, no action can be maintained until such statement is filed; but with respect to the details of the statement precise exactness is not absolutely essential. *If it reasonably complies with the statute, and the city is not misled to its prejudice by*

*any defects of description of the place where the accident happened, the city has no reason to complain. The statement filed in the present case accomplished the object of the statute."* (Emphasis added.) 75 Kan. at 536.

Maintaining in his brief that his notice to George met the statute's purpose because it supplied the Board with actual notice of his claim, Smith stated:

"The chief executive officer of the hospital had actual notice of plaintiff's claims. The county commissioners who set up and operate the board of trustees of the hospital had actual notice of plaintiff's claims. The defendant had all of the information necessary to investigate the merit of plaintiff's claims in a timely manner. . . . The purpose of the statute is to provide the municipality an opportunity to investigate the incident at the time while the occurrence is still fresh in the minds of those possessing knowledge on the subject. Plaintiff's notice to the chief executive officer of the hospital and the county commissioners fulfilled the purpose of the statute."

On the other hand, the Board argues that the substantial compliance language in K.S.A. 12-105b is inapplicable to the *governing body to be served,* and refers only to the content of the notice. For support, the Board cites *Hibbs v. City of Wichita,* 176 Kan. 529, 271 P.2d 791 (1954); *Mowery v. Kansas City,* 115 Kan. 61, 222 Pac. 126 (1924); and *Dechant v. City of Hays,* 112 Kan. 729, 732, 212 Pac. 682 (1923), and argues that these cases rest "upon the proposition that service of notice upon a person or entity other than that specified by statute was the legal equivalent of no service at all."

Although these cases provide some support for the Board's argument, *Dechant* and *Mowery* are not exactly on point. In *Dechant,* a child received a severe shock from an electric wire. In its petition, the family stated that within 30 minutes, the city manager learned of the accident, visited the boy, and was fully informed concerning the facts of the accident. Significantly, before bring suit on the boy's behalf, the family neglected to file the notice required under the previous version of K.S.A. 12-105b. In response to the city's demurrer, the family argued alternatively that the statute's notice requirements should not apply to a minor and that the city manager's actual knowledge constituted a waiver of the notice requirement. The *Dechant* court found neither argument persuasive and

affirmed the trial court's dismissal of the suit. Rejecting the plaintiff's waiver argument, the court stated:

"Appellant further contends that should the statute be construed as applicable to appellant, the petition sets forth facts sufficient to constitute a waiver of such notice and an estoppel to assert same on the part of the city. It will be noted that there is no condition of waiver or estoppel in the statute itself. In view of the various officials and employees which a city may and necessarily does have, to transact the business of its government, it would be a dangerous and uncertain provision to interpret into a statute. Certainly, if the legislature desired or contemplated that the provisions of this statute might be waived, it should have designated the official and the manner in which such waiver might be effected. No officer of the city had power or authority to waive this statutory notice." 112 Kan. at 732.

Similarly, in *Mowery*, the plaintiff filed a notice of claim with the City of Kansas City, but included the wrong accident date. Affirming the district court's dismissal of the plaintiff's case, the *Mowery* court held that the notice containing the erroneous accident date did not meet the statute's notice requirement. The plaintiff also argued that the investigating officer's report constituted notice under the statute. Predictably, in rejecting this argument, the *Mowery* court stated:

"It is suggested by appellant that notice to a police officer who investigated the matter and his report thereof to the chief of police should be construed as a sufficient compliance with the statute. With this we cannot agree. . . .

"[I]n this case the report of the policeman did not disclose any liability on behalf of the city for injuries inflicted by a mob or for any other reason, nor did it disclose that plaintiff claimed damages by reason thereof. . . . The statute requires a written statement to be filed with the city clerk. This is not a great burden to put upon a claimant and must be complied with." 115 Kan. at 62.

Finally, *Hibbs*, which provides the most direct support for the Board's argument that the statute requires that the proper "governing body" be served, predates the substantial compliance language included in the current version of the statute. In *Hibbs*, the plaintiff filed a petition in which he stated that he had served a notice of claim upon "the governing body of the City of Wichita." 176 Kan. at 531. Ironically, the version of K.S.A. 12-105b then in effect specifically required that a notice of claim be filed with the city clerk. Holding that the notice described in the petition was

insufficient, the *Hibbs* court reversed the trial court's order over-ruling the defendant's demurrer for failure to state a claim. In doing so, the court held that the requirement that the city clerk be served was as important as the substantive requirements and equally mandatory. The court stated:

"[R]ecognizing our decisions are uniform to the effect that failure of a petition to disclose the filing of the statement required under the provisions of 12-105, *supra,* renders such pleading demurrable for failure to state a cause of action, appellee's next contention seeks to overrule those decisions. In any event it seeks to avoid their force and effect. *He suggests they all deal with situations where the statement was filed with the city clerk too late or where no statement at all, giving the city notice of the claim, was presented to some member of the governing body of the city, hence they are not to be regarded as controlling precedents. Otherwise stated, that the filing of the statement with the city clerk himself, or at least with that office, is not a part of the condition precedent established by the legislature.* We believe that question has been determined adversely to appellee's contention by the decisions heretofore cited, particularly by the statement quoted from *Cook v. Topeka,* supra, and the emphasized language of the portion of the opinion quoted from *Mowery v. Kansas City,* supra. Be that as it may, and assuming the point has not been specifically determined, *we are convinced the filing of the statement* with the city clerk *is just as much, and just as vital, a condition precedent to the maintenance of the action as the condition prescribing the period of time within which such statement must be filed and we so hold."* (Emphasis added.) 176 Kan. at 535.

Although these cases arguably support the Board's argument that the proper party must be served, they predate the legislature's addition of the "substantial compliance" language to the statute. When the legislature revises an existing law, it is presumed the legislature intended to change the law as it existed prior to the amendment. *State v. Spain,* 263 Kan. 708, 711, 953 P.2d 1004 (1998); *Osborn v. Electric Corp. of Kansas City,* 23 Kan. App. 2d 868, 871, 936 P.2d 297, *rev. denied* 262 Kan. 962 (1997). Significantly, there are no Kansas cases addressing the impact of the substantial compliance language upon the requirement that a municipality's governing body be served with a notice of claim.

However, the federal courts have touched on this issue. In *Huffman v. City of Prairie Village, KS,* 980 F. Supp. 1192 (D. Kan. 1997), the plaintiff worked for the Prairie Village Police Department. Alleging sex discrimination, the plaintiff sued the depart-

ment and the City of Prairie Village for intentional infliction of emotional distress after serving the city attorney with a notice of claim. In determining whether the notice sufficiently complied with K.S.A. 12-105b, the *Huffman* court noted the dearth of Kansas cases on this issue and turned to cases from other jurisdictions construing similar statutes. Importantly, the court acknowledged a split of authority as to whether notice to a city attorney is sufficient to comply with such statutes but concluded that Kansas courts would find the notice insufficient. The court reasoned:

"The court has not discovered a case in which Kansas courts have considered whether notice to the City Attorney is sufficient to comply with the requirements of the K.S.A. 12-105b. However, in several older cases involving a statute similar to K.S.A. 12-105b, the Kansas courts have concluded that notice filed with the Clerk is a condition precedent to filing an action against a municipality, and the fact that city officials may be aware of the incident or the claim would not enable such officials to waive the requirements of the statute. *See Howell v. City of Hutchinson*, 177 Kan. 722, 282 P.2d 373, 377 (1955); *Dechant v. City of Hays*, 112 Kan. 729, 212 Pac. 682 (1923).

"Other states that have similar notice requirements have considered the issue of whether service of the notice on a City Attorney substantially complies with the notice statute. These courts have reached differing results. Compare *Long v. Knoxville*, 62 Tenn. App. 665, 467 S.W.2d 309 (1970) (letter to city attorney was insufficient to comply with notice statute that required notice to mayor); *McGuire v. Hennessy*, 292 Minn. 429, 193 N.W.2d 313 (1971) (notice of claim sent to city attorney was inadequate to comply with notice statute that required notice to governing body) with *Jenkins v. City of Wilmington*, 45 N.C. App. 528, 263 S.E.2d 343 (1980) (notice of claim sent to city attorney and city manager was sufficient where notice statute required notice to city council).

"Given the Kansas law on this issue, although it is not directly on point, we are persuaded by the defendant's argument. The Kansas statute is worded clearly, and we do not find that notice sent to the City Attorney constitutes substantial compliance with its requirements. The decisions by the Kansas Supreme Court in *Howell* and *Dechant* suggest this result. Accordingly, we find that the defendant is entitled to dismissal of plaintiff's intentional infliction of emotional distress claim." 980 F. Supp. at 1206.

On the other hand, in *Tank v. Chronister*, 941 F. Supp. 969 (D. Kan. 1996), the court denied the hospital's motion to dismiss based upon a failure to meet K.S.A. 12-105b notice requirements. The husband of a deceased patient sued the Board of Trustees of the Wilson County Hospital and the treating physician for medical mal-

practice. The husband dismissed his initial lawsuit and refiled several months later. Significantly, the husband failed to file a notice of claim. Nevertheless, the court determined that the service of the first petition constituted substantial compliance with the statute's notice requirements. The court stated:

"[T]he hospital makes an extensive argument that the EMTALA [Emergency Medical Treatment and Active Labor Act] and state medical malpractice claims should be dismissed because the plaintiff failed to comply with K.S.A. 12-105b(d), providing for prior notice of claims to municipalities and their agencies. The plaintiff makes an even more extensive response, arguing that the hospital waived the requirements of the statute, that federal law precludes application of K.S.A. 12-105b to the EMTALA claims, and that in any event there was substantial compliance with the provisions of the notice statute.

"Having reviewed all the arguments, the court finds that the plaintiff substantially complied with the terms of the notice statute. . . .

"Prior to filing the present action, the plaintiff filed a separate action against the hospital to preserve access to Kathleen Tank's medical records, and this action and the associated pleadings serve as notice that an action for damages would follow. By its express terms, the notice statute requires only substantial compliance . . . . 'Substantial compliance' under Kansas law means 'compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.' *City of Lenexa v. City of Olathe*, 233 Kan. 159, 164, 660 P.2d 1368 (1983). The notice statute at issue here requires that a claimant 'makes an attempt to state each element required of the notice.' *Wiggins v. Housing Auth. of Kansas City*, 19 Kan. App. 2d 610, 613, 873 P.2d 1377, *rev. denied*, 255 Kan. 1007 (1994) (citing *Tucking v. Board of Jefferson County Com'rs*, 14 Kan. App. 2d 442, 796 P.2d 1055, *rev. denied*, 246 Kan. 770 (1990)).

. . . .

"[T]hrough the pleadings submitted by counsel for Tank in connection with the action for injunctive relief and through other correspondence, the administrators of defendant hospital were presented with information relevant to all of the key elements of K.S.A. 12-105b(d): the identity and addresses of the parties involved, the nature of the incident, the injury suffered, and that a substantial claim for damages would be advanced. Thus, the hospital and its agents were given information relating to all of the elements cited in K.S.A. 12-105b(d). The plaintiff here clearly fulfilled the purpose of the statute by giving a clear indication to the hospital of the claim that would be raised against it, along with information which would allow the hospital to adequately investigate the basis for that claim." 941 F. Supp. at 974-75.

Although it is unclear whether the *governing body* of the hospital was actually served with the husband's first petition, *Tank* focuses

upon the fact that the hospital had sufficient notice to investigate the facts of the incident. *Tank* implies that the hospital's actual notice constitutes substantial compliance under the statute. As a result, *Tank* offers some support for Smith's argument that his service of a notice of claim upon George provided the hospital with actual notice constituting substantial compliance under the statute.

The legislative intent of K.S.A. 12-105b is to insure that a municipality is made aware of a claim against it and that the municipality has ample time to investigate the claim before being sued on that claim. Here, the notices of claim were sent to George, chief executive officer of CCH, and Birk, the clerk of the Board of County Commissioners of Coffey County. Under K.S.A. 12-105a, the Board of County Commissioners of Coffey County is the parent unit of CCH. In addition, the CCH notices furnished the essentials of the statute. As a result, we conclude that notices to George and Birk substantially complied with the notice provisions of K.S.A. 12-105b.

Finally, the Board and Kennedy also argue alternatively that the information contained in Smith's notices are substantively insufficient to meet the 12-105b requirements. We disagree. Moreover, this argument was not presented to the trial court and is, therefore, not properly before this court. Significantly, the parties failed to make this argument in their motion to dismiss and during the hearing on the motion. See also *Bolyard v. Kansas Dept. of SRS*, 259 Kan. 447, Syl. ¶ 8, 912 P.2d 729 (1996) ("A new legal theory may not be asserted for the first time on appeal or raised in a reply brief."); *State v. Trotter*, 245 Kan. 657, Syl. ¶ 1, 783 P.2d 1271 (1989) (a record which fails to show an issue was raised before the trial court precludes consideration of that issue on appeal).

Reversed.