(57 P.3d 35)

No. 88,261

ROBERT AND KAREN SHAFFER, *Appellants,* v. CITY OF TOPEKA, KANSAS, *Appellee.*

Opinion filed November 8, 2002.

*Gary L. Fanning, Jr.,* of Butler & Associates, P.A., of Topeka, for appellants.

*Gregory A. Lee,* of Davis, Unrein, McCallister, Biggs & Head, L.L.P., of Topeka, for appellee.

Before RULON, C.J., KNUDSON AND BEIER, JJ.

BEIER, J.: Plaintiffs Robert and Karen Shaffer ask us to reverse summary judgment granted in favor of defendant City of Topeka (City) on statute of limitations grounds. We decline and affirm.

A brief review of the facts is necessary to an understanding of our decision.

The Shaffers sustained water damage to their Topeka home, which they attributed to the City's negligence in executing a shut-off order. They filed a claim with their insurance company, State Farm Fire & Casualty (State Farm), on November 8, 1998. On April 12, 1999, a State Farm representative sent a letter regarding

the problem to the city clerk. On April 26, 1999, a Topeka assistant city attorney responded that the State Farm letter had been referred to her by the city clerk and that a records search turned up no previous K.S.A. 12-105b claim filed against the City for water damage by anyone named Shaffer. The City therefore denied relief.

On April 28, 1999, State Farm sent a notice of claim pursuant to K.S.A. 12-105b to the assistant city attorney and a copy of the notice to the city clerk. On December 16, 1999, City Attorney Linda Jeffrey sent a letter to State Farm, denying the claim.

On March 15, 2000, attorney Todd Butler of Butler & Associates, P.A., wrote Jeffrey to ask her to waive his firm's conflict of interest. He wanted to be free to file a negligence lawsuit against the City on behalf of plaintiffs and State Farm. Butler acknowledged the City had denied the 12-105b claim through its December 16 letter and included a copy in his correspondence. Jeffrey waived the conflict of interest by a hand-delivered letter on August 14, 2000.

On September 18, 2000, Gary Fanning of Butler & Associates delivered another 12-105b notice of claim to the city clerk. On September 22, 2000, Jeffrey acknowledged receipt of the notice, stated that the claim should be deemed denied if the City failed to approve it or reach a settlement within 120 days, and asked Fanning to send any documents that might support the claim.

On January 10, 2001, Jeffrey wrote to Fanning again. In this letter, she explained to Fanning that the September 2000 12-105b notice did not deal with a new claim because it made precisely the same complaint as the April 1999 State Farm notice denied on December 16, 1999. She noted that the City's denial letter was sent well before the statute of limitations expired in October or November 2000, and thus the September 2000 12-105b claim had not extended the statute of limitations.

On January 16, 2001, plaintiffs filed their lawsuit against the City. The City filed a motion for summary judgment on statute of limitations grounds. Plaintiffs opposed it by arguing that 12-105b did not prohibit a later unnecessary notice from being filed to extend the statute of limitations. They also argued that the September

2000 notice was necessary rather than unnecessary because the April 1999 notice had mistakenly been sent to the assistant city attorney rather than the city clerk. Finally, they argued in the alternative that equitable estoppel barred the City from relying upon a statute of limitations defense.

The district court granted the City's motion, finding that State Farm complied with 12-105b by filing its April 1999 notice with the City, that the claim should have been deemed denied when more than 120 days passed without a response, and that the plaintiffs were given explicit notice of the City's denial of the claim on December 16, 1999. At that point, the district judge said "there should have been no doubt by Plaintiffs as to the claim's status," and they had no legal basis to believe the statute of limitations would be extended. Allowing multiple unnecessary 12-105b notices to be filed would extend the statute beyond its intend scope and give rise to judicial inefficiency, the judge said. He did not explicitly address plaintiffs' attempt to block the City's statute of limitations defense through equitable estoppel.

Our standard of review on the grant of a motion for summary judgment is well established:

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c). On appeal, we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Jackson v. U.S.D. 259*, 268 Kan. 319, 322, 995 P.2d 844 (2000).

On appeal, plaintiffs argue the district court erred in finding that their April 1999 notice of claim substantially complied with K.S.A. 12-105b because it was addressed to the assistant city attorney rather than the city clerk; thus the filing of their September 2000 notice was required and should have extended the statute of limitations. The determination of whether a notice complies with 12-105b requires statutory interpretation and gives this court unlimited review. *Smith v. Kennedy*, 26 Kan. App. 2d 351, 352, 985 P.2d 715, *rev. denied* 268 Kan. 888 (1999).

K.S.A. 12-105b(d) provides in relevant part:

"Any person having a claim against a municipality which could give rise to an action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality . . . . In the filing of a notice of claim, substantial compliance with the provisions and requirements of this subsection shall constitute valid filing of a claim . . . . Once notice of the claim is filed, no action shall be commenced until after the claimant has received notice from the municipality that it has denied the claim or until after 120 days has passed following the filing of the notice of claim, whichever occurs first. A claim is deemed denied if the municipality fails to approve the claim in its entirety within 120 days unless the interested parties have reached a settlement before the expiration of that period. No person may initiate an action against a municipality unless the claim has been denied in whole or part. Any action brought pursuant to the Kansas tort claims act shall be commenced within the time period provided for in the code of civil procedure or it shall be forever barred, except that, if compliance with the provisions of this subsection would otherwise result in the barring of an action, such time period shall be extended by the time period required for compliance with the provisions of this subsection."

Plaintiffs rely upon *Huffman v. City of Prairie Village, KS*, 980 F. Supp. 1192, 1206 (D. Kan. 1997), in which the Kansas District Court found that a notice of claim which was sent *only* to the city attorney did not substantially comply with K.S.A. 12-105b(d). We are unpersuaded by this authority. The April 1999 notice in this case was also sent to the city clerk as required by K.S.A. 12-105b(d). The letter began: "Please let me provide the following information to you and the City Clerk," and it concluded with a statement that the information was being given both to the city attorney and to the "City according to K.S.A. 12-105b(d)." The notice was file stamped by the city clerk on May 5, 1999.

This process complied with the spirit as well as the letter of the law. "The legislative intent of K.S.A. 12-105b is to insure that a municipality is made aware of a claim against it and that the municipality has ample time to investigate the claim before being sued on that claim." *Smith*, 26 Kan. App. 2d at 361. The April 1999 notice was successful in advising the City of the details of the claim and in giving City officials adequate time to investigate before the process server arrived.

Having concluded the district court correctly regarded the April 1999 notice as substantially in compliance with the statute, we must

decide the further issue of the effect, if any, on the statute of limitations of the later unnecessary September 2000 12-105b notice.

Plaintiffs claim that neither case law nor the language of the statute itself prohibits a later unnecessary notice of claim from being filed to extend the statute of limitations under K.S.A. 12-105b(d). To hold otherwise, they argue, would frustrate the prosecution of valid claims and allow defendants to escape liability on a technicality rather than on the merits. It is no surprise that the City believes the district court was correct when it held a later unnecessary notice of claim could not extend the statute of limitations.

Plaintiffs provide no authority to support their position other than their vague appeal to sympathy, and the district court's holding is eminently reasonable. Any party who properly files a notice of claim under the statute is afforded the opportunity to have its case decided on the merits by filing an action once the claim is denied or has not been resolved in 120 days. A later unnecessary notice does nothing to advance the claim toward resolution; it merely delays court action and promotes inefficient use of City resources to process an identical claim. The language of the statute is plain. The "time period provided in the code of civil procedure" controls unless "compliance with" 12-105b requires more time. Plaintiffs in this case had already complied with 12-105b well before the expiration of the "time period provided in the code of civil procedure." They needed no grace period to file their lawsuit, and the City needed no grace period to do its preliminary review of the claim's merit.

Plaintiffs' final argument invokes the doctrine of equitable estoppel. The application of an equitable doctrine rests within the sound discretion of the district court. *Bankers Trust Co. v. United States of America,* 29 Kan. App. 2d 215, 218, 25 P.3d 877 (2001). Judicial discretion is abused when no reasonable person would take the view adopted by the district court. *In re Marriage of Rayman,* 273 Kan. 996, 999, 47 P.3d 414 (2002). We interpret the district judge's silence on this issue and his grant of summary judgment to the City to mean he rejected plaintiffs' attempt to apply the equitable estoppel doctrine.

Plaintiffs argue Jeffrey's actions between August 14, 2000, and January 10, 2001, gave the appearance that she was treating the claim raised in the September 2000 notice as new. They argue they reasonably relied on her actions to assume the statute of limitations would be extended. The City counters that, despite Jeffrey's actions, the plaintiffs should have been well aware they had to file their lawsuit within the 2-year statute of limitations because their April 1999 notice had already been denied.

"The doctrine of equitable estoppel has been frequently used to prevent a defendant from relying on the statute of limitations as a defense where the defendant's fraudulent or wrongful conduct has caused the plaintiff not to file suit within the period of the statute of limitations." *Robinson v. Shah*, 23 Kan. App. 2d 812, 832, 936 P.2d 784 (1997). A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed, and it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, Syl. ¶ 4, 991 P.2d 889 (1999).

A party asserting equitable estoppel against a government must prove:

" '(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.' " *In re Application of Kinnet*, 26 Kan. App. 2d 250, 258, 984 P.2d 725 (1999) (quoting *Allen v. United States*, 630 F. Supp. 367, 371 [D. Kan. 1984]).

The City points out correctly that the plaintiffs were not ignorant of the true facts concerning their claim. They knew that their April 1999 notice had been denied. Butler's March 2000 letter to the city attorney acknowledged the claim had been denied and sought a waiver of a conflict of interest in order to file suit. Jeffrey waived the conflict the following August. It is difficult to see how this waiver could have prompted another 12-105b notice a month later, particularly with the 2-year time limit for the filing of a lawsuit looming.

The situation in *Rockers* was analogous. In that case, Rockers' counsel contacted the Kansas Turnpike Authority's (KTA's) general counsel, Dugan, and informed him he was prepared to file a petition against the KTA for retaliatory discharge. However, Rockers' counsel said, he had discovered the notice provision and thus needed the name and address of the KTA's clerk. Dugan did not say that 12-105b notice was unnecessary; he merely named the person to be served and requested that he receive a copy as well. Rockers' counsel later contended that this conversation led him to make the mistake of serving notice of claim under 12-105b(d) rather than filing a lawsuit within the applicable statute of limitations. 268 Kan. at 117.

Rockers argued on appeal that the KTA should be estopped from asserting a statute of limitations defense because Dugan misled his counsel. The Kansas Supreme Court disagreed:

"Estoppel by silence is often described as involving silence as to material knowledge not held by the other. See *Ferrell v. Ferrell*, 11 Kan. App. 2d 228, 234, 719 P.2d 1, *rev. denied* 239 Kan. 693 (1986). The material information Rockers complains about not receiving did not consist of material facts or knowledge known only to the KTA. The relevant statutes and the case law applicable to those statutes, the fact our case law has always described the KTA as an arm or instrumentality of the State, and the fact the KTA has never been held to be a municipality subject to notice under K.S.A. 12-105b(d) were all facts and legal information equally available to both parties.

"Rockers did not rightfully rely on Dugan's silence or responsive statements. The KTA had no duty to speak, it did not assert that notice was required, and it did not affirmatively mislead the attorney as to material knowledge held only by the KTA. The attorneys for each side are responsible to their respective clients for researching the law and drawing their own conclusions regarding the applicability of the notice statute. A party cannot base a claim of estoppel on its own acts or omissions induced by the party's own conduct. *Gillespie v. Seymour*, 250 Kan. 123, 130, 823 P.2d 782 (1991). Opposing counsel had no duty to give Rockers his legal opinion on this unsettled point of law and Rockers did not rightfully rely on opposing counsel's failure to express an opinion.

"Furthermore, in order to show reliance, the party ' " 'must show some change in position in reliance on the adversary's misleading statement.' " ' *Bowen v. Westerhaus*, 224 Kan. 42, 46, 578 P.2d 1102 (1978) (quoting *In re Morgan*, 219 Kan. 136, 137, 546 P.2d 1394 [1976] ). Here, Rockers' attorney stated they planned to file a notice of claim and merely contacted Dugan with regard to who should

receive the notice. Rockers cannot show he changed his position based on Dugan's silence." 268 Kan. at 118-19.

In this case, Jeffrey's actions did not conceal a material fact because plaintiffs knew the April 1999 claim already had been denied. Even without that explicit denial, they could have anticipated that the April 1999 notice was in substantial compliance with K.S.A. 12-105b(d). The district court did not abuse its discretion in refusing to apply the doctrine of equitable estoppel.

Affirmed.